IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

FEDERAL TRADE COMMISSION,

        Plaintiff,

v.

TAPESTRY, INC.,

and

CAPRI HOLDINGS LIMITED,

        Defendants.

Civil Action No. 1:24-cv-03109-JLR-BCM

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION FOR A MORE DEFINITE STATEMENT OR, IN THE ALTERNATIVE,
TO REQUIRE PLAINTIFF TO ANSWER ONE CONTENTION INTERROGATORY**

**TABLE OF CONTENTS**

**Page**

BACKGROUND ...................................................................................................................4

ARGUMENT .......................................................................................................................5

    1.    The Court Should Order The FTC To Provide A More Definite Statement Of The Contours Of Its Alleged "Accessible Luxury Handbag" Relevant Product Market..................................................................................................6

    2.    In The Alternative, Defendants Request That The Court Order The FTC To Respond On An Expedited Basis To One Contention Interrogatory Regarding Its Alleged Relevant Market ...............................................................10

CONCLUSION..................................................................................................................11

i

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Am. Stock Exch., LLC v. Mopex, Inc.*,
 215 F.R.D. 87 (S.D.N.Y. 2002) ..................................................................................................12

*Apotex Corp. v. Hospira Healthcare India Priv. Ltd.*,
 No. 18-4903, 2020 WL 58247 (S.D.N.Y. Jan. 6, 2020) ...............................................................6

*Bayer Schering Pharma AG v. Sandoz, Inc.*,
 813 F. Supp. 2d 569 (S.D.N.Y. 2011) ..........................................................................................7

*City of New York v. Group Health Inc.*,
 649 F.3d 151 (2d Cir. 2011) .........................................................................................................1

*FTC v. IQVIA Holdings Inc.*,
 No. 23-06188, 2024 WL 81232 (S.D.N.Y. Jan. 8, 2024) .............................................................1

*FTC v. Qualcomm Inc.*,
 969 F.3d 974 (9th Cir. 2020) ........................................................................................................1

*Kuklachev v. Gelfman*,
 600 F. Supp. 2d 437 (E.D.N.Y. 2009) ..........................................................................................6

*Michael E. Jones, M.D., P.C. v. UnitedHealth Grp., Inc.*,
 No. 19-7972, 2021 WL 4443142 (S.D.N.Y. Sept. 28, 2021) .......................................................6

*Moccio v. Cablevision Sys. Corp.*,
 208 F. Supp. 2d 361 (E.D.N.Y. 2002) ........................................................................................10

*Nat'l Gear & Piston, Inc. v. Cummins Power Sys., LLC*,
 861 F. Supp. 2d 344 (S.D.N.Y. 2012) ........................................................................................10

*Radiancy, Inc. v. Viatek Consumer Prod. Grp., Inc.*,
 138 F. Supp. 3d 303 (S.D.N.Y. 2014) ..........................................................................................7

*United States v. Oracle Corp.*,
 331 F. Supp. 2d 1098 (N.D. Cal. 2004) .....................................................................................10

*United States v. U.S. Sugar Corp.*,
 73 F.4th 197 (3d Cir. 2023) .........................................................................................................1

*United States v. Visa U.S.A., Inc.*,
 344 F.3d 229 (2d Cir. 2003) .........................................................................................................1

**STATUTES**

Clayton Act § 7 ...................................................................................................................1

**RULES**

Fed. R. Civ. P. 12(e) .........................................................................................................4, 6

Local Civil Rule 33.3(c) .......................................................................................................4

**OTHER AUTHORITIES**

Madeleine Schulz, *These brands are reinventing accessible luxury. Just don't call it that*, Vogue, May 1, 2024, https://www.voguebusiness.com/story/fashion/these-brands-are-reinventing-accessible-luxury-just-dont-call-it-that ........................................................................3

iii

As the FTC well knows, a "threshold step in any antitrust case is to accurately define the relevant market." *FTC v. Qualcomm Inc.*, 969 F.3d 974, 992 (9th Cir. 2020). This is the rule in the Second Circuit and across the country. *See*, *e.g.*, *City of New York v. Group Health Inc.*, 649 F.3d 151, 155 (2d Cir. 2011) ("To state a claim under [the antitrust laws], a plaintiff must allege a plausible relevant market in which competition will be impaired."); *United States v. Visa U.S.A., Inc.*, 344 F.3d 229, 238 (2d Cir. 2003) ("[T]he government must demonstrate that within the relevant market, the defendants' actions have had substantial adverse effects on competition. . . ."). In a FTC challenge to a merger, the FTC has the burden to define this market as the first step in the analysis under Section 7 of the Clayton Act. *FTC v. IQVIA Holdings Inc.*, No. 23-06188, 2024 WL 81232, at *11 (S.D.N.Y. Jan. 8, 2024) ("The FTC's initial burden is to define a relevant market in which the proposed acquisition is likely to harm competition."). "Defining the relevant market is a 'necessary predicate' to finding a Clayton Act violation because the proposed merger 'must be one which will substantially lessen competition within the area of effective competition.'" *Id. See also United States v. U.S. Sugar Corp.*, 73 F.4th 197, 203 (3d Cir. 2023) ("[T]he government must establish a prima facie case that the merger is anticompetitive. To do so, it must 'propose the proper relevant market and . . . show that the effect of the merger in that market is likely to be anticompetitive.'").

Accordingly, the FTC must allege a market with discernable contours so that the court can examine whether a transaction substantially lessens competition in that market, and defendants can be on notice as to who is in and out of the market for purposes of defending against the FTC's claims. The FTC's definition of the relevant market will be a primary focus of Defendants' case at the injunctive proceeding and a gating issue for the Court's analysis. Being able to understand

the FTC's alleged definition of the market is key to the parties efficiently litigating the issues and the Court's ability to analyze the evidence and issue its opinion.

To date, however, the FTC has continuously refused to define its relevant market with any discernable boundaries.  For example, the Complaint (ECF No. 1) fails to answer the basic question of what the FTC defines as a "handbag."  Defendants have no idea whether "handbags" as used in the Complaint includes all or some of "women's and men's handbags, backpacks, duffel bags, cross-body bags, business bags, and other small bags."  These quoted terms are how the *FTC itself defined handbag during its investigation of the proposed transaction*.  But the Complaint gives no guidance whether "handbags" includes some, all, or none of these products.  The Complaint's assertion of an "accessible luxury" market fares no better and rests on vague, hedged, and sometimes contradictory language to differentiate it from "mass market" and "luxury."  The FTC provides no clarity as to what products fall within which categories.  Simply put, Defendants do not know if the FTC's "accessible luxury handbag" market is defined around certain brands, is bounded by price points, or is defined by the consumer's household income.  All of these factors are splayed throughout the rambling complaint—and yet there is no simple definition.  What is in the market and what is out?

If the FTC was new to these facts, this ambiguity might be understandable.  It is not.  Given the FTC's lengthy pre-complaint investigation, and its repeated refusals to provide any clarifications throughout its investigation and now in its complaint to block the deal from closing, its failure to define what an "accessible luxury handbag" is appears to be a conscious and strategic choice.  This is an urgent problem because, as the parties move into expedited discovery, the Complaint's ambiguity around the relevant market will hamstring Defendants' ability to defend themselves and potentially require both Defendants and third parties to incur burden that could

easily be avoided.  Defendants presently intend to show, among other things, that the FTC's market is inconsistent with commercial realities because it does not accurately reflect how competition occurs in 2024.  But Defendants simply cannot do that effectively without knowing the basic contours of the FTC's alleged product market.

The FTC appears to believe that pointing to examples of Defendants' documents that use the term "accessible luxury" somehow relieves it of its fundamental burden to define the market allegedly threatened by Defendants' proposed merger.  That is not how antitrust law works.  The term "accessible luxury" is just that—a label or term, not a well-defined, widely agreed upon definition.  Coach first coined the term as a marketing concept more than twenty years ago, covering the full line of products that Coach sells from shoes to wallets to sunglasses to handbags and more.  Coach never intended it to define a product market, nor does it actually do so.  In addition, industry commentators such as *Vogue* and other sellers of handbags have made clear that the FTC's complaint provides "a limited view of a category that has exploded and morphed in recent years" and that the terminology "accessible luxury" is "limiting or not reflective of the reality of the place we hold, which is a unique one."  Madeleine Schulz, *These brands are reinventing accessible luxury. Just don't call it that*, Vogue, May 1, 2024, https://www.voguebusiness.com/story/fashion/these-brands-are-reinventing-accessible-luxury-just-dont-call-it-that.

The FTC apparently has already calculated market shares and a market concentration index, Compl. ¶¶ 71-75, which necessarily means the FTC has a specific view of which products and brands are in its "accessible luxury handbag" market.  Yet the FTC refuses to tell Defendants or the Court.  Accordingly, pursuant to Rule 12(e) of the Federal Rules of Civil Procedure, Defendants respectfully ask the Court to order the FTC to provide a more definite statement.  In

the alternative, Defendants request, pursuant to Local Civil Rule 33.3(c), that the Court order the FTC to respond to a contention interrogatory regarding its proposed market within seven days of the Court's order.

## BACKGROUND

Tapestry announced its proposed acquisition of Capri almost nine months ago, on August 10, 2023. A key purpose of the transaction is to increase demand for Capri's products, including the Michael Kors brand, which has seen sales for its products declining for years. Tapestry intends to improve the Michael Kors products to better resonate with consumers by giving consumers what they want. Tapestry hopes to achieve this outcome in a space where hundreds of rival brands already compete, where new entrants quickly gain popularity and sales when a celebrity appears with the new entrant's bag, and where consumer perceptions of brand and product attributes are critical to purchasing decisions.

Since the transaction was first announced, the parties have produced to the FTC millions of documents, troves of data, and offered multiple witnesses to answer questions as part of the FTC's internal, pre-complaint investigation. Defendants also repeatedly asked the FTC to identify the contours of the market in which it was considering potential harm to competition as a result of the transaction. The FTC steadfastly refused to do so, including in the complaints it filed on April 22, 2024. To this day, the FTC still has not defined what constitutes a "handbag" nor identified the limiting principles that it contends determine what products and competitors should be considered to be part of its vaguely asserted "accessible luxury handbags" market.

In an effort to avoid this motion, Defendants met and conferred with the FTC on April 30, 2024. During that meeting, Defendants repeatedly asked the FTC to define the scope of its alleged relevant market using whatever methodology the FTC relied upon in deciding to sue. This could have included identifying a price range for "accessible luxury" handbags or explaining how the

agency arrived at its alleged calculations of Defendants' market shares, and alleged increases in market concentration. Compl. ¶¶ 2, 71, 75. To calculate market shares as it did, the FTC had to define a set of competitors and their competing products as the basis for those shares as well as a relevant metric (such as revenues, unit sales, or something else)—there is no means of calculating market share without a denominator for the total competitive set. The FTC responded that the Complaint "speaks for itself" and that such issues should be resolved during expert discovery. In other words, the FTC takes the position that Defendants are not entitled to learn the alleged contours of its relevant market until *after* all fact discovery concludes.[1]

## ARGUMENT

Whether to grant a motion for a more definitive statement is in the discretion of the Court. *See Kuklachev v. Gelfman*, 600 F. Supp. 2d 437, 456 (E.D.N.Y. 2009) (*citing* 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1377 (2d ed. 1990)). Such a motion is intended to address allegations that are "so vague or ambiguous that the party cannot reasonably prepare a response," and the motion "must point out the defects complained of and the details desired." Fed. R. Civ. P. 12(e).[2] Defendants identify the defects and ambiguities complained of and the details desired with respect to those issues below.

---

[1] During that meet and confer, the parties also discussed the Complaint's allegations that the proposed merger would eliminate "competition for labor" between Defendants, and noting that "Tapestry and Capri together employ more than 33,000 employees worldwide." The FTC asserted that it was not alleging a relevant labor market of any kind.

Based on the FTC's representations, Defendants will not be mounting a defense to harm in a labor market because the FTC agrees that it is not advancing a separate theory of harm beyond the allegation that the transaction will harm competition for "accessible luxury handbags."

[2] Defendants recognize that the FTC will cite cases saying that Rule 12(e) motions are disfavored because discovery can address uncertainties in the complaint. That certainly can be true in the run-of-the-mill case. But, this is an injunction proceeding moving on a highly-expedited basis so the Court cannot delay resolving these critical issues.

1. **The Court Should Order The FTC To Provide A More Definite Statement Of The Contours Of Its Alleged "Accessible Luxury Handbag" Relevant Product Market**

The FTC's burden to plead a plausible relevant market is not an empty one. The FTC must "plead facts from which the Court could infer the contours of the relevant market," *Michael E. Jones, M.D., P.C. v. UnitedHealth Grp., Inc.*, No. 19-7972, 2021 WL 4443142, at *6 (S.D.N.Y. Sept. 28, 2021), and the FTC "must offer a theoretically rational explanation for why the boundaries of the market are defined as they are," *Apotex Corp. v. Hospira Healthcare India Priv. Ltd.*, No. 18-4903, 2020 WL 58247, at *5–6 (S.D.N.Y. Jan. 6, 2020). *See also Radiancy, Inc. v. Viatek Consumer Prod. Grp., Inc.*, 138 F. Supp. 3d 303, 323 (S.D.N.Y. 2014) (finding plaintiff failed to allege facts to "distinguish among comparable products"); *Bayer Schering Pharma AG v. Sandoz, Inc.*, 813 F. Supp. 2d 569, 575–77 (S.D.N.Y. 2011) (holding plaintiffs must "offer a theoretically rational explanation for why the boundaries of the market are defined as they are and must define the market").

The FTC's failure to articulate the boundaries of its alleged relevant market is prejudicing Defendants and that prejudice will only grow with time. Right now, Defendants are left to guess at how the FTC might seek to define "handbag" and "accessible luxury" at trial. The inevitable result is that Defendants and nonparties will suffer unnecessary burden as Defendants will need to serve and pursue necessarily broader subpoenas than if the FTC were to provide a more definite statement. The FTC could obviate this by revealing the basic boundaries of its alleged relevant market.

*First*, the Complaint fails to define the term "handbags." By contrast, in its investigation into the proposed transaction, the FTC defined "handbags" as "women's and men's bags and cases used for common everyday purposes, such as handbags, backpacks, duffel bags, cross-body bags, business bags, and other small bags." Defendants have no way of knowing whether, for example,

men's backpacks, duffel bags, or business bags are included in the FTC's proposed market in this case. And Defendants cannot formulate a defense without knowing which of their own products or competitors' products are part of the FTC's product market.

**Second**, the Complaint fails to clearly define "accessible luxury" handbags. Its attempts to distinguish "mass-market" and "true luxury" handbags further muddles the scope of the alleged "accessible luxury handbag" relevant market:

*Pricing*. The Complaint makes inconsistent statements about how pricing relates to "accessible luxury." The FTC offers that at least one Tapestry document opines that "mass-market" handbags "typically fall" below $100, and that luxury handbags have "entry points of $1,000+." Compl. ¶ 33. But that same discussion in the Complaint also cites to a different Tapestry document indicating a "product focus" in North America "between $150-500." *Id.* ¶ 30. Those are very different ways to slice the pie, and could lead to different sets of competitors, different sets of third-party discovery, and of course different market shares.

In addition, because market definition hinges on whether products are functionally interchangeable from the consumer's standpoint, most antitrust complaints that seek to narrow a market normally allege why *similar products* offered at *different price points* are not reasonably interchangeable. Here, for example, if the FTC believes $1000 is the price ceiling on an "accessible luxury handbag," it should allege why a $1,100 handbag is not competitive with a $900 handbag. And similarly, if the floor of the FTC's market is $100, the FTC should allege whether a handbag with a $125 list price that is on sale for 25% off is still in the market. If the FTC can continue to dodge the relevance of price to its analysis, Defendants do not know if these various products at either end are in or out of the FTC's market. These decisions have significant consequences for the FTC's case—the FTC knows this from evidence it received during its

7

investigation and allowing it to continue to dodge this question is prejudicial to Defendants' ability to contest the FTC's market shares.

*Materials.* The Complaint vaguely asserts that "accessible luxury handbags" are made from "high-quality materials," *id.* ¶ 3, while "true luxury" handbags are made from "the finest materials and leather," *id.* ¶ 4. The Complaint also claims that mass market bags "are often composed of manmade materials," *id.* ¶ 39, but it is not clear if a bag should not be considered "accessible luxury" or "true luxury" if it is made from recycled plastics for example.

*Manufacturing*. The Complaint asserts that "mass-market" handbags are made in China, while "accessible luxury" handbags are made "in Asia." *Id.* ¶ 42. And the Complaint claims that "accessible luxury" handbags are produced with "fine craftsmanship," Compl. ¶ 3, while "true luxury" handbags are produced with "the finest craftsmanship," *id.* ¶ 39. These are empty adjectives that, again, do nothing to put Defendants on notice as to what the FTC contends is within and outside the bounds of the relevant market. There is no explanation of the difference between "fine" and "finest," nor of what to do with the many competitive products sold at prices comparable to Tapestry's or Capri's goods, manufactured in the United States, Europe, and other countries.

*Customers*. The Complaint fails to allege a discernible market on the basis of a distinct set of customers and yet seems to be focused on a subset of Defendants' customers with a specific household income. The Complaint alleges that approximately half of Coach and Michael Kors customers have household incomes of less than $80,000; and, thus, the remainder have household incomes of more than that amount. *Id.* ¶¶ 5, 36–37. Meanwhile, the Complaint alleges "over 60 percent of consumers of true luxury brands . . . had household income in excess of $100,000," meaning that approximately 40% had incomes below that amount. *Id.* ¶ 37. The Complaint says nothing about the household income of customers that purchase "mass-market" handbags. These

allegations confirm that the FTC has not coherently defined its market based on consumer income. But again, if the FTC intends to mount a case based on a customer segment, it needs to state that now.

*Promotions*.  The Complaint vaguely claims that "accessible luxury" handbags "are characterized by a high degree of, and frequent, discounting and promotions," while "true luxury" brands have "no-discounting polic[ies]." *Id.* ¶ 40.  Does this mean that any competitor that sells a product at discount is in the proposed relevant market?  The Complaint does not say, nor does it discuss how discounting policies differentiate between a "mass market handbag" and an "accessible luxury handbag."

The FTC's failure to provide a coherent definition for its product market is particularly frustrating because the FTC has evidently already done so.  The FTC alleges in its Complaint that the merger will result in the combined entity having a market share over a certain threshold in the "accessible luxury handbags" market, meaning that the FTC has necessarily identified a relevant market that constitutes the denominator for that calculation.  The Complaint also contains an extensive discussion of the Herfindahl-Hirschman Index ("HHI"), a metric that assesses market concentration by calculating "the sum of the squares of the market shares of the market participants." Compl. ¶ 72; *see id.* ¶¶ 72–75.  Yet, even if the FTC is applying its own Horizontal Merger Guidelines, to calculate market concentration using the HHI metric, *the FTC must first identify "all firms that currently supply products . . . in a relevant market."*  U.S. Dep't of Just. & FTC, Merger Guidelines at 50 § 4.4B (2023).  The FTC claims it has performed this exercise, alleging that the merger "increases the HHI in the market for 'accessible luxury' handbags." Compl. ¶ 75.  The FTC has thus necessarily determined the bounds of its alleged relevant market (i.e., which products are included and not), identified all suppliers of the included products in the

9

United States, and calculated how much of the qualifying products each of those suppliers is selling, in order to calculate market shares. The FTC thus faces no burden in simply revealing the market definition it has already used to Defendants. But the FTC has consciously withheld this crucial information from Defendants, and now states that it will not be revealed except via their expert(s), which means *after the close of fact discovery*.

To be clear, Defendants do not intend to dictate to the FTC the parameters of the relevant market; the FTC can try to prove whatever market it chooses. But it must choose, and disclose its choice. *See, e.g.*, *Nat'l Gear & Piston, Inc. v. Cummins Power Sys., LLC*, 861 F. Supp. 2d 344, 373 (S.D.N.Y. 2012) (finding that the plaintiff "neither adequately defined a relevant product market, nor provided a plausible explanation as to why a market should be limited in a particular way" due to the plaintiff's "conflicting" and "unclear" allegations concerning market definition (internal quotation marks omitted)); *United States v. Oracle Corp.*, 331 F. Supp. 2d 1098, 1121 (N.D. Cal. 2004) (holding that "[p]roduct characteristics that are too vague do not meet section 7's requirement that the relevant market be 'well-defined'"); *Moccio v. Cablevision Sys. Corp.*, 208 F. Supp. 2d 361, 377 (E.D.N.Y. 2002) ("Plaintiffs' failure to allege the scope and boundaries of the relevant market is more than a mere oversight" because it "severely hampers [Defendants'] ability to answer the . . . Complaint."). Defendants respectfully ask the Court to order the FTC, within seven days, to provide a more definite statement of its alleged relevant market, including specifying what products and/or suppliers it contends are in that market.

### 2. In The Alternative, Defendants Request That The Court Order The FTC To Respond On An Expedited Basis To One Contention Interrogatory Regarding Its Alleged Relevant Market

The FTC has argued that the contours of the relevant market are a matter for discovery, but as Defendants have pointed out, the Court's local rules normally do not allow for a contention interrogatory until "the conclusion of other discovery." *See* Local Rule for the United States

District Courts for the Southern and Eastern Districts of New York 33.3(c). Given the short discovery period in this accelerated proceeding, a contention interrogatory at the end of discovery would do no good. Defendants therefore ask, in the alternative, that the Court order the FTC to respond to one interrogatory, within seven days of the Court's ruling: "Define the product market you intend to prove at trial."

This should be a simple task where the FTC answers what is in its relevant market in a manner that ensures there is a meeting of minds among the FTC, the Defendants, and the Court as to what the contours are of the product market that the FTC believes is at risk. The Defendants and the Court would know what the FTC contends is a "handbag," whether the market is defined on the basis of brand or price, and whether there are any other particular boundaries to the FTC's alleged market. The Federal Rules were intended to avoid "trial by ambush." *Am. Stock Exch., LLC v. Mopex, Inc.*, 215 F.R.D. 87, 93 (S.D.N.Y. 2002). Permitting the FTC to wait until the end of fact discovery to provide a product market definition—once Defendants no longer have an opportunity to seek third party discovery—is precisely what the Federal Rules are intended to prevent.

## CONCLUSION

For the foregoing reasons, Defendants respectfully move this Court to order the FTC to provide a more definite statement regarding its proposed relevant market definition.

In the alternative, Defendants request that the Court should order the FTC to respond to one contention interrogatory within seven days of the Court's order: "Define the product market you intend to prove at trial."

Dated: May 3, 2024                                    Respectfully submitted,

*/s/ Alfred C. Pfeiffer*
Alfred C. Pfeiffer (*pro hac vice*)
Christopher S. Yates (*pro hac vice*)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: (415) 395-8240
Facsimile: (415) 395-8095
al.pfeiffer@lw.com
chris.yates@lw.com

Amanda P. Reeves (*pro hac vice*)
Ian R. Conner (*pro hac vice*)
Lindsey S. Champlin (*pro hac vice*)
Jennifer L. Giordano
David L. Johnson (*pro hac vice*)
Seung Wan (Andrew) Paik (*pro hac vice*)
Mary A. Casale (*pro hac vice*)
Christopher J. Brown (*pro hac vice*)
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
Telephone: (202) 637-2200
Facsimile: (202) 637-2201
amanda.reeves@lw.com
ian.conner@lw.com
lindsey.champlin@lw.com
jennifer.giordano@lw.com
david.johnson@lw.com
andrew.paik@lw.com
mary.casale@lw.com
chris.brown@lw.com

Lawrence E. Buterman
LATHAM & WAKINS LLP
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
lawrence.buterman@lw.com

Sean M. Berkowitz (*pro hac vice*)
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Facsimile: (312) 993-9767
sean.berkowitz@lw.com

*Attorneys for Tapestry, Inc.*

<u>/s/ Jonathan M. Moses</u>
Jonathan M. Moses[3]
Elaine P. Golin
Adam L. Goodman
Brittany A. Fish
51 West 52nd Street
New York, New York 10019
Telephone: (212) 403-1000
JMMoses@wlrk.com
EPGolin@wlrk.com
ALGoodman@wlrk.com
BAFish@wlrk.com

*Attorneys for Capri Holdings Limited*

---

[3] Electronic signatures used with consent in accordance with Rule 8.5(b) of the Court's ECF Rules and Instructions.