## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

FEDERAL TRADE COMMISSION,

                   Plaintiff,

       v.

TAPESTRY, INC.,

and

CAPRI HOLDINGS LIMITED,

                  Defendants.

Case No. 1:24-cv-03109-JLR

## PLAINTIFF FEDERAL TRADE COMMISSION'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR A MORE DEFINITE STATEMENT OR, IN THE ALTERNATIVE, TO REQUIRE PLAINTIFF TO ANSWER ONE CONTENTION INTERROGATORY

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

BACKGROUND ............................................................................................................... 2

LEGAL STANDARD ........................................................................................................ 4

ARGUMENT .................................................................................................................... 6

I.   DEFENDANTS MAKE NO EFFORT TO SHOW THAT THE COMPLAINT IS
     "UNINTELLIGIBLE" UNDER RULE 12(E)—AND IT IS NOT. .................................... 7

II.  DEFENDANTS MISCHARACTERIZE THE FTC'S BURDEN UNDER SECTION
     13(B) OF THE FEDERAL TRADE COMMISSION ACT............................................... 11

III. DEFENDANTS ARE NOT ENTITLED TO PREMATURE CONTENTION
     INTERROGATORIES AND EXPERT DISCOVERY. ...................................................... 16

CONCLUSION ................................................................................................................ 20

# TABLE OF AUTHORITIES

## Cases

*Advanced Commc'ns Techs., Inc. v. Li*, No. 05 CIV. 4628 (RWS), 2005 WL 3215222
(S.D.N.Y. Nov. 30, 2005) ................................................................................ 4

*Akridge v. Whole Foods Mkt. Grp., Inc.*, No. 20 CIV. 10900 (ER), 2022 WL 955945
(S.D.N.Y. Mar. 30, 2022) .......................................................................... 5, 12

*Apotex Corp. v. Hospira Healthcare India Priv. Ltd.*, No. 18-CV-4903 (JMF), 2020 WL
58247 (S.D.N.Y. Jan. 6, 2020) ..................................................................... 12

*Bayer Schering Pharma AG v. Sandoz, Inc.*, 813 F. Supp. 2d 569 (S.D.N.Y. 2011) ................... 12

*Brown Shoe Co. v. United States*, 370 U.S. 294 (1962) ......................................... *Passim*

*CG3 Media, LLC v. Belleu Technologies, LLC*, No. 1:21-cv-04607-MKV, 2022 WL 1172499
(S.D.N.Y. Apr. 20, 2022) ............................................................................ 17

*Erconia v. Bissoon*, No. 07 Civ. 8696 (DLC), 2011 WL 3904600 (S.D.N.Y. Aug. 26, 2011) ...... 17

*ESI, Inc. v. Coastal Corp.*, 61 F. Supp. 2d 35 (S.D.N.Y. 1999) ............................... 4, 6, 8

*Fort Worth Emps. Ret. Fund v. J.P. Morgan Chase & Co.*, 297 F.R.D. 99
(S.D.N.Y. Dec. 16, 2013) ............................................................................. 18

*Fraije v. Clinton*, No. 8:10–CV–514, 2010 WL 5464802 (N.D.N.Y. Dec. 29, 2010) ................. 11

*FTC v. Crescent Pub. Group, Inc.*, 129 F. Supp. 2d 311 (S.D.N.Y. 2001) ......................... 5

*FTC v. IQVIA Holdings Inc.*, No. 23 CIV. 06188 (ER), 2024 WL 81232
(S.D.N.Y. Jan. 8, 2024) ............................................................................ *Passim*

*FTC v. Lancaster Colony Corp.*, 434 F. Supp. 1088 (S.D.N.Y. 1977) ............................. 6, 15

*FTC v. Meta Platforms, Inc.*, No. 22 Civ. 04325 (EJD), 2022 WL 16637996
(N.D. Cal. Nov. 2, 2022) .............................................................................. 6

*FTC v. Qualcomm*, 969 F.3d 974 (9th Cir. 2020) ................................................. 12

*CMT USA, Inc. v. Apex Tool Grp. LLC,* No. 1:23-CV-07507 (JLR), 2023 WL 8622400
(S.D.N.Y. Dec. 13, 2023) ....................................................................... 5, 8, 9, 10

*City of New York v. Group Health Inc.*, 649 F.3d 151 (2d Cir. 2011) ........................... 12

*FTC v. Staples, Inc.*, 190 F. Supp. 3d 100 (D.D.C. 2016) ............................................................. 16

*FTC v. Staples, Inc.*, 970 F. Supp. 1066 (D.D.C. 1997) ................................................................ 13

*FTC v. Surescripts, LLC*, 665 F. Supp. 3d 14 (D.D.C. 2023) ................................................... 14, 15

*FTC v. Whole Foods Mkt., Inc.*, 548 F.3d 1028 (D.C. Cir. 2008) ..........................................*Passim*

*In re European Rail Pass Antitrust Litig.*, 166 F. Supp. 2d 836 (S.D.N.Y. 2001) ................... 4, 11

*In re Facebook, Inc. Sec. Litig.*, MDL No. 12-2389, 2016 WL 5080152
    (S.D.N.Y. May 10, 2016) ...................................................................................................... 17, 18

*Kok v. First Unum Life Ins. Co.*, 154 F. Supp. 2d 777 (S.D.N.Y. 2001) ......................................... 4

*Markovic v. New York City Sch. Const. Auth.*, No. 99 CIV. 10339 (AGS), 2000 WL 1290604
    (S.D.N.Y. Sept. 13, 2000) ................................................................................................ 5, 8, 11

*Michael E. Jones, M.D., P.C. v. UnitedHealth Grp., Inc.*, No. 19-CV-7972 (VEC), 2021 WL
    4443142 (S.D.N.Y. Sept. 28, 2021) .......................................................................................... 12

*Moccio v. Cablevision Sys. Corp.*, 208 F. Supp. 2d 361 (E.D.N.Y. 2002) .................................... 12

*Nat'l Gear & Piston, Inc. v. Cummins Power Sys., LLC*, 861 F. Supp. 2d 344
    (S.D.N.Y. 2012) ........................................................................................................................ 12

*Photovest Corp. v. Fotomat Corp.*, 606 F.2d 704 (7th Cir. 1979) ................................................. 16

*Pratt v. Atalian Global Servs. Inc. et al.*, No. 20 Civ. 3710 (PAE), 2021 WL 1234253
    (S.D.N.Y. Apr. 2, 2021) ............................................................................................................ 17

*Radiancy, Inc. v. Viatek Consumer Prod. Grp.*, 138 F. Supp. 3d 303 (S.D.N.Y. 2014) ............... 12

*Shapiro v. U.S. Dep't of Justice*, 969 F. Supp. 2d 18 (D.D.C. 2013) ............................................ 19

*Trib. Co. v. Purcigliotti*, No. 93 Civ. 7222 (LAP) (THK), 1997 WL 540810 (S.D.N.Y Sept. 3,
    1997) .......................................................................................................................................... 17

*United States v. Anthem, Inc.*, No. 16-cv-1493 (ABJ), 2016 WL 11755527
    (D.D.C. Sept. 30, 2016) ....................................................................................................... 18, 19

*United States v. Anthem,* No. 16-cv-1493 (ABJ), 2016 WL 11755535
    (D.D.C. Oct. 14, 2016) .............................................................................................................. 18

*United States v. Bertelsmann SE & Co. KGaA*, 646 F. Supp. 3d 1 (D.D.C. 2022) ....................... 16

*United States v. Dean Foods Co.*, No. 10-CV-59, 2010 WL 1417926
  (E.D. Wis. Apr. 7, 2010) ........................................................................... 11

*United States v. Manufacturers Hanover Trust Co.*, 240 F. Supp. 867 (S.D.N.Y. 1965) .............. 13

*United States v. Oracle Corp.*, 331 F. Supp. 2d 1098 (N.D. Cal. 2004) ...................................... 12

*United States v. Pabst Brewing Co.*, 384 U.S. 546 (1966) ............................................................. 9

*United States v. United States Sugar Corp.*, 73 F.4th 197 (3d Cir. 2023) ................................... 12

*United States v. Visa U.S.A., Inc.*, 344 F.3d 229 (2d Cir. 2003) ................................................. 12

*Wetzel v. Town of Orangetown*, 03 Civ. 9896, 2005 WL 8179319 (S.D.N.Y. Sept. 2, 2005) ..... 5, 9

**Statutes**

15 U.S.C. § 18 ............................................................................................................. 2, 12, 13

15 U.S.C. § 53(b) ................................................................................................................*Passim*

**Rules**

Fed. R. Civ. P. 8(a)(2) ............................................................................................................. 5

Fed. R. Civ. P. 12(a)(1)(A) ...................................................................................................... 7

Fed. R. Civ. P. 12(b)(6) ..................................................................................................... 11, 12

Fed. R. Civ. P. 12(e) ....................................................................................................*Passim*

Fed. R. Civ. P. 26(b)(3)(B) ..................................................................................................... 18

Fed. R. Civ. P. 26(a)(1)(a)(i) ................................................................................................... 8

Fed. R. Civ. P. 33(b)(2) ............................................................................................................ 4

Loc. Civ. R. 33.3 ........................................................................................................*Passim*

Plaintiff Federal Trade Commission (the "Commission" or "FTC") respectfully submits this Memorandum of Law in Opposition to Defendants' Motion for a More Definite Statement Or, in the Alternative, to Require Plaintiff to Answer One Contention Interrogatory.

## **INTRODUCTION**

Rather than answer the FTC's complaint, Defendants have filed a dilatory Rule 12(e) motion in an attempt to short-circuit the discovery process for themselves while leaving the FTC to guess at their defenses. But make no mistake: Defendants can "reasonably prepare a response" to the FTC's complaint. Fed. R. Civ. P. 12(e). They have already denied the FTC's allegations in filings with the Securities & Exchange Commission ("SEC"), in public statements, before this Court, and again in their moving papers. Defs.' Mem. Supp. at 3. Nothing prevents them from doing so in answering the FTC's complaint.

 Unable to meet the legal standard for a Rule 12(e) motion, Defendants ask this Court, in the "alternative," to grant them an early contention interrogatory. Defendants, however, already stipulated *not* to conduct such early discovery in the Case Management and Scheduling Order ("CMSO"), which the Court entered last Wednesday, May 1, 2024 (Dkt. 71). The CMSO makes clear that contention interrogatories cannot be served until "later in the discovery period"—a provision Defendants added during the parties' negotiations. Yet days after this Court entered the CMSO with this provision, Defendants seek a one-sided exception. This request is in contradiction to the negotiated CMSO, contrary to Local Rule 33.3, and serves only to delay the FTC's ability to engage in discovery regarding Defendants' defenses.

But even if that were not the case, Defendants' motion also fails because Defendants misconstrue the FTC's burden when it proceeds, as it does here, under Section 13(b) of the Federal Trade Commission Act, 15 U.S.C. § 53(b), to pause a proposed acquisition until the Commission has had the opportunity to adjudicate the acquisition's legality on the merits under

Section 7 of the Clayton Act in an administrative proceeding. As made clear in the only Section 13(b) preliminary injunction case cited by Defendants: "the burden on the FTC in this litigation is lower than the burden it will face in the administrative proceeding. The FTC does not need to prove the merits of its case to obtain a preliminary injunction under section 13(b). As that standard pertains to the market definition inquiry, then, it is 'not necessary at this point' for the FTC to *prove* the existence of the [relevant product] market." *FTC v. IQVIA Holdings Inc.*, No. 23 CIV. 06188 (ER), 2024 WL 81232, at \*24 (S.D.N.Y. Jan. 8, 2024) (quoting *FTC v. Whole Foods Mkt., Inc.*, 548 F.3d 1028, 1041 (D.C. Cir. 2008)) (emphasis in original). "The FTC need only raise serious and substantial questions that are suitable for consideration by the Commission itself in the first instance." *Id.*

The FTC's complaint has made the required showing by citing a plethora of the parties' own documents supporting a relevant product market for "accessible luxury" handbags—a product category that Defendants *themselves* created and the industry has adopted. The detailed factual allegations in the complaint are sufficient to put Defendants on notice of the FTC's proposed market, and now the path forward is to proceed through discovery the proper way, by following the CMSO. Defendants' motion should be denied.

## BACKGROUND

On April 22, 2024, having found reason to believe that the Proposed Acquisition violated the antitrust laws, the FTC, in a bipartisan 5-0 vote, initiated an administrative proceeding to determine whether Tapestry, Inc.'s proposed acquisition of Capri Holdings Limited (the "Proposed Acquisition") will harm competition.  The FTC also authorized the filing of this case seeking a temporary restraining order and preliminary injunction to preserve the status quo until the Commission has had the opportunity to adjudicate the Proposed Acquisition's legality in an administrative proceeding. Compl. at 1-2 & ¶¶ 16-18. In its 41-page complaint, the FTC devoted

nearly nine pages to allegations concerning the relevant product market of "accessible luxury" handbags, relying largely on the *Brown Shoe*[1] factors and Defendants' own documents. *Id.* at ¶¶ 28-45. Specifically, the FTC pled that the industry, and the parties, recognize "accessible luxury" handbags as a distinct market (*id.* at ¶¶ 28-32), with distinct pricing (*id.* at ¶¶ 33-35), distinct customers (*id*. at ¶¶ 36-37), peculiar characteristics and uses (*id*. at ¶¶ 38-41), and unique production facilities (*id*. at ¶¶ 42-43). That same day, both Defendants issued press releases and filed 8-Ks with the SEC in which they denied the allegations of the FTC's complaint. Quinn Decl. at Exs. A & B.

On April 26, 2024, Defendants provided the FTC with their proposed redlines to the CMSO that the parties had begun to negotiate. Quinn Decl., Ex. C. Among other things, Defendants included a provision whereby the parties could serve five "contention interrogatories, *served later in the discovery period*." *Id.* at 5 (emphasis added). The following Monday, April 29, 2024, this Court held a case management conference, at which Defendants first raised that they sought "a prompt, defined statement of what markets we are actually supposedly shooting at." Quinn Decl., Ex. D at 12:11-13. At that same conference, Defendants urged this Court to set a deadline of Wednesday, May 1, 2024, for any disputes regarding the proposed CMSO, *id.* at 27:24-25, which the Court ordered from the bench, informing the parties that the submission should include "a joint letter that highlights any discovery obstacle that you have, be it a cap on third-party subpoenas or whatever it is, you'll let me know right away . . .I [can] get it resolved and we can go from there." *Id.* at 29:5-8.

Following the conference with the Court, the FTC sent Defendants redlines to the proposed CMSO, which accepted Defendants' revisions to the provision on interrogatories and

---

[1] *Brown Shoe Co. v. United States*, 370 U.S. 294, 325 (1962).

clarified that "contention interrogatories, served later in the discovery period" was "pursuant to Local Rule 33.3." Quinn Decl., Ex. E at 4. Shortly afterward, the parties met and conferred about Defendants' impending motion, as well as the proposed CMSO. Quinn Decl. ¶ 7. At no point did Defendants state that they would seek relief from Local Rule 33.3—or seek to remove the provision regarding "contention interrogatories, served later in the discovery period" that they proposed. *Id.* at ¶ 7. In fact, Defendants shortly thereafter accepted the FTC's redlines to the provision regarding contention interrogatories, Quinn Decl., Ex. F at 4, and the parties ultimately submitted a joint proposed CMSO, which the Court entered on May 1, 2024. Dkt. 71. Among other things, the CMSO sets a shorter time period for responding to interrogatories than provided under Federal Rule of Civil Procedure 33(b)(2) (although still longer than the period that the FTC initially proposed), *id.* at 5; puts caps on party interrogatories and requests for production that are not found in the Federal or Local Rules, *id.* at 3, 5; and adopts Defendants' proposal on "contention interrogatories, served later in the discovery period." *Id.* at 5.

## <u>LEGAL STANDARD</u>

**Rule 12(e).**   "A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed R. Civ. P. 12(e). This relief, however, is only appropriate where a pleading is "so excessively vague and ambiguous as to be unintelligible and as to prejudice the defendant seriously in attempting to answer it." *ESI, Inc. v. Coastal Corp.*, 61 F. Supp. 2d 35, 68 (S.D.N.Y. 1999) (internal quotations omitted); *accord In re European Rail Pass Antitrust Litig.*, 166 F. Supp. 2d 836, 844 (S.D.N.Y. 2001); *Kok v. First Unum Life Ins. Co.*, 154 F. Supp. 2d 777, 781-82 (S.D.N.Y. 2001); *Advanced Commc'ns Techs., Inc. v. Li*, No. 05 CIV. 4628 (RWS), 2005 WL 3215222, at *3 (S.D.N.Y. Nov. 30, 2005). Such motions "generally are disfavored because of their dilatory effect." *In re European Rail Pass Antitrust Litig.*, 166 F.

Supp. 2d at 844 (internal quotations omitted). Rule 12(e) is "designed to remedy unintelligible pleadings, not merely to correct for a lack of detail," and is "not intended to substitute for the normal discovery process." *CMT USA, Inc. v. Apex Tool Grp. LLC,* No. 1:23-CV-07507 (JLR), 2023 WL 8622400, at *2 (S.D.N.Y. Dec. 13, 2023) (internal quotations omitted); *accord Akridge v. Whole Foods Mkt. Grp., Inc.*, No. 20 CIV. 10900 (ER), 2022 WL 955945, at *4 (S.D.N.Y. Mar. 30, 2022); *Markovic v. New York City Sch. Const. Auth*., No. 99 CIV. 10339 (AGS), 2000 WL 1290604, at *3 (S.D.N.Y. Sept. 13, 2000). "[I]f the complaint meets the notice pleading requirements of Rule 8 of the Federal Rules of Civil Procedure, the motion should be denied." *Wetzel v. Town of Orangetown*, 03 Civ. 9896, 2005 WL 8179319, at *7 (S.D.N.Y. Sept. 2, 2005). Rule 8 only requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed R. Civ. P. 8(a)(2).

**Section 13(b).** Section 13(b) of the FTC Act "authorizes the Commission to obtain a preliminary injunction '[u]pon a proper showing that, weighing the equities and considering the Commission's likelihood of ultimate success, such action would be in the public interest.'" *FTC v. Crescent Pub. Group, Inc.*, 129 F. Supp. 2d 311, 319 (S.D.N.Y. 2001) (quoting 15 U.S.C. § 53(b)). Under Section 13(b), courts "follow a two-step inquiry that asks (1) whether the FTC has shown a likelihood of ultimate success on the merits in the administrative proceeding, and (2) whether the equities weigh in favor of an injunction." *IQVIA*, 2024 WL 81232, at *7. Preliminary injunctions under § 13(b) "are meant to be readily available to preserve the status quo while the FTC develops its ultimate case, and ***it is quite conceivable that the FTC might need to seek such relief before it has settled on the scope of the product or geographic markets implicated by a merger***." *Whole Foods*, 548 F.3d at 1036 (emphasis added).

When the FTC seeks to preliminarily enjoin a merger under Section 13(b), "courts do not

require the FTC to prove the merits of its [Section 7] case," and "the scope of the Section 13(b) inquiry is necessarily limited and narrow." *IQVIA*, 2024 WL 81232, at *9 (quoting *FTC v. Meta Platforms, Inc.*, No. 22 Civ. 04325 (EJD), 2022 WL 16637996, at *5 (N.D. Cal. Nov. 2, 2022)); *accord FTC v. Lancaster Colony Corp.*, 434 F. Supp. 1088, 1091 (S.D.N.Y. 1977) ("a district court can hardly do more at so early a stage of antitrust litigation than to make a considered estimate of the FTC's apparent chances of success based upon what must necessarily be an imperfect, incomplete and fragile factual basis"). As such, to establish a likelihood of ultimate success on the merits, the FTC need only "raise[] serious questions about the antitrust merits that warrant thorough investigation in the first instance by the FTC." *IQVIA*, 2024 WL 81232, at *9. Importantly, "[a]s that standard pertains to the market definition inquiry, then, it is 'not necessary at this point' for the FTC to *prove* existence of the [relevant product] market." *Id.* at *24 (quoting *Whole Foods*, 548 F.3d at 1041) (emphasis in original). Indeed, "a merger between two close competitors can sometimes raise antitrust concerns due to unilateral effects in highly differentiated markets. In such a situation, it might not be necessary to understand the market definition to conclude a preliminary injunction should issue." *Whole Foods*, 548 F.3d at 1036 n.1 (internal citation omitted).

## **ARGUMENT**

Defendants seek discovery about the FTC's contentions regarding market definition in this case. Yet they do not even try to make the required showing under Rule 12(e) that the FTC's existing complaint is so "excessively vague and ambiguous as to be unintelligible and as to prejudice the defendant seriously in attempting to answer it." *ESI*, 61 F. Supp. 2d at 68. Nor could they—because the FTC's complaint easily satisfies the Rules and, in fact, heavily relies on the parties' own documents and public statements. Their motion for a more definite statement under Rule 12(e) should thus be denied.

Defendants are also not entitled to the "alternative" relief that they seek: an early contention interrogatory requiring the FTC to "[d]efine the product market you intend to prove at trial" within seven days of this Court's ruling on their motion. Leaving aside that the merits trial will occur in the administrative proceeding on September 25, 2024—and not here, where there will be an evidentiary hearing on the FTC's request for a preliminary injunction under Section 13(b), *IQVIA*, 2024 WL 81232, at *9 ("courts do not require the FTC to prove the merits of its case in a section 13(b) proceeding")—this Court should reject Defendants' efforts to renegotiate a provision in the CMSO *that they inserted* while depriving the FTC of discovery regarding their defenses (through their answers under Rule 12(a)(1)(A)). Moreover, even if Defendants had brought their request to the Court at the proper time—last Wednesday, May 1, at 5 p.m.—they cannot show why they are entitled to premature contention interrogatories and expert discovery. For the reasons set for below, Defendants' motion should be denied.

## I.   DEFENDANTS MAKE NO EFFORT TO SHOW THAT THE COMPLAINT IS "UNINTELLIGIBLE" UNDER RULE 12(E)—AND IT IS NOT.

Conspicuously absent from Defendants' motion is any analysis and application of the case law regarding Rule 12(e)—and for good reason. Defendants all but admit this motion is procedurally inappropriate, *see* Defs.' Mem. Supp. at 5 n.2, and accordingly do not even bother to argue—because they cannot—that the FTC's complaint is so "unintelligible" so as to prejudice Defendants in answering it. After all, Defendants have spent the two weeks since the filing of the complaint repeatedly denying the FTC's allegations—in press releases, in SEC filings, before this Court, and in their own brief in support of this motion. Defs.' Mem. Supp. at 3 ("Defendants presently intend to show, among other things, that the FTC's market is inconsistent with commercial realities because it does not accurately reflect how competition occurs in 2024.").

Rather than comply with Rule 12(e), Defendants do not try to hide that they are using this motion to obtain early contention and expert discovery. They are doing so while delaying providing their own answer and defenses and thus prejudicing the FTC's ability to take its own discovery regarding defenses and issues on which Defendants bear the burden of proof, such as any claimed efficiencies arising from the Proposed Acquisition. *See generally IQVIA*, 2024 WL 81232, at *48-51.[2]

As previously discussed, this Court has made clear that Rule 12(e) is "designed to remedy unintelligible pleadings, not merely to correct for lack of detail." *CMT USA*, 2023 WL 8622400, at *2. "[S]uch motions are generally disfavored and are not intended to substitute for the normal discovery process." *Id.* Indeed, "allegations that are unclear due to a lack of specificity are more appropriately clarified by discovery rather than by an order for a more definite statement." *Markovic*, 2000 WL 1290604, at *4. To obtain relief on a Rule 12(e) motion, Defendants must demonstrate that the complaint is "excessively vague and ambiguous as to be unintelligible and as to prejudice the defendant seriously in attempting to answer it." *ESI*, 61 F. Supp. 2d at 68.

Although Defendants spend a significant portion of their brief attacking each of the *Brown Shoe* factors on the merits (Defs.' Mem. Supp. at 6-9), they nowhere point to any specific allegations that are so "unintelligible" that Defendants cannot possibly admit or deny the allegation. That is required by Rule 12(e) and alone is fatal to their motion. Indeed, Defendants' ability to nitpick the merits of FTC's allegations—which are detailed and rely on Defendants'

---

[2] Defendants have also pointed to their motion as a basis for not providing identification of third parties "likely to have discoverable information—along with the subjects of that information— that the disclosing party may use to support its claims or defenses," as required by Rule 26(a)(1)(a)(i). Quinn Decl., Exs. G (Defendant Tapestry Inc.'s Rule 26(a) Initial Disclosures) & H (Defendant Capri Holdings Limited's Rule 26(a) Initial Disclosures).

own documents and statements, including statements to investors (Compl. at ¶¶ 3, 35, 67, 82, 88)—demonstrates that they are hardly in need of more information in order to answer the complaint. *See Wetzel*, 2005 WL 8179319, at *8.

Defendants also fail to identify any prejudice in answering the complaint, instead arguing that the FTC's allegations as a whole do not provide "the boundaries of [the FTC's] alleged relevant market" with the specificity that Defendants desire and that is "prejudicing" them more generally. Defs.' Mem. Supp. at 6; *see also id.* at 3, 11 (asking for the "particular boundaries to the FTC's alleged market"). Leaving aside that "the failure of the Government to prove by an army of expert witnesses what constitutes a relevant 'economic' or 'geographic' market is not an adequate ground on which to dismiss a § 7 case," *United States v. Pabst Brewing Co*., 384 U.S. 546, 549 (1966), much less a Section 13(b) case, *Whole Foods*, 548 F.3d at 1036 ("Nor does the FTC necessarily need to settle on a market definition at this preliminary stage"), Defendants do not explain why any lack of detail regarding the "particular boundaries" of the alleged market here prevents them from answering the complaint. Nor do Defendants' vague references to "prejudice" save them because Rule 12(e) does not deal with prejudice generally—it is meant to only address prejudice that would necessarily arise from answering an "unintelligible" complaint. *See CMT USA*, 2023 WL 8622400, at *2.[3]

---

[3] Even if it were proper to consider general prejudice on a Rule 12(e) motion, Defendants do not explain how or why they will "need to serve and pursue necessarily broader subpoenas than if the FTC were to provide a more definite statement." Defs.' Mem. Supp. at 6-7. Defendants in Section 13(b) cases routinely argue that the product market is broader—and therefore less concentrated—than the relevant market asserted by the agencies. *E.g., IQVIA*, 2024 WL 81232, at *12 ("The parties in this case have fundamentally disagreed about whether certain products qualify as reasonable substitutes"); *see also Whole Foods*, 548 F.3d at 1040 (FTC asserted a market of "Premium Natural and Organic Supermarkets," but Defendants contended that customers of "Premium Natural and Organic Supermarkets" also shopped in "ordinary" or "conventional supermarkets). There is no reason whatsoever to believe that Defendants will

To get around the requirements of Rule 12(e), Defendants argue that the Local Rules'
prohibition on early contention interrogatories has forced them to seek relief through this motion.
Defs.' Mem. Supp. at 10-11. But the parties negotiated a whole host of exceptions to the Federal
and Local Rules in their proposed CMSO (Dkt. 69), which the Court entered on May 1, 2024.
*See, supra,* at 4-5. Moreover, after the FTC proposed no contention interrogatories in its initial
draft CMSO, Defendants added a provision that provided for five "contention interrogatories,
served later in the discovery period." Quinn Decl. Ex. C at 5. If Defendants had wanted an early
contention interrogatory, they could have raised that during CMSO negotiations; as it is, they
represented to the Court on May 1, 2024 that there were "no disputes for the Court to resolve,"
Dkt. 69 at 1, thus punting this issue to a later time and on a longer briefing schedule—and, in the
meantime, hamstringing the FTC's ability to take discovery of Defendants' defenses and the
individuals whom the parties may use to defend this case. *See* Quinn Decl. Exs. G (Defendant
Tapestry Inc.'s Rule 26(a) Initial Disclosures) & H (Defendant Capri Holdings Limited's Rule
26(a) Initial Disclosures). Even if that were not the case, Defendants are not allowed to backdoor
their request for an early contention interrogatory through a Rule 12(e) motion. *See CMT USA*,
2023 WL 8622400, at *2 (Rule 12(e) motions "are not intended to substitute for the normal
discovery process").

Defendants further try to duck the requirements of Rule 12(e) by suggesting that a
different standard applies in expedited cases and therefore the Court "cannot delay resolving
these critical issues." *See* Defs.' Mem. Supp. at 5 n.2. As an initial matter, Defendants agreed to
the schedule that the Court entered on May 1, 2024. Dkt. 68 & 69. Nothing, including the parties'

---

*accept* the FTC's market definition here, and therefore limit the discovery they seek from third
parties.

self-imposed "Outside Date" in their merger agreement, prevented Defendants from seeking a schedule that would have the preliminary injunction hearing later, including after the merits proceeding in the administrative court. In any event, Defendants do not cite a single case to support their contention that Rule 12(e) has a different meaning in "expedited" cases or in cases for injunctive relief. Indeed, in the single opinion involving Rule 12(e) in a merger case brought by the federal government that the FTC has been able to locate, the court denied Rule 12(e) relief, noting there was "no basis to impose the type of heightened specific pleading standard advocated by the defendant." *See United States v. Dean Foods Co.*, No. 10-CV-59, 2010 WL 1417926, at *4 (E.D. Wis. Apr. 7, 2010).

Finally, courts routinely deny Rule 12(e) motions because, far from imposing efficiency, they are dilatory—delaying responsive pleadings and setting back discovery overall. *See, e.g.*, *In re European Rail Pass Antitrust Litig.*, 166 F. Supp. 2d at 844; *Markovic*, 2000 WL 1290604, at *3. That is the case here. Defendants' failure to timely respond to the FTC's complaint is preventing the FTC from beginning discovery regarding defenses on which Defendants bear the burden of proof in pleading and proving. Moreover, Defendants have also impermissibly used this motion as an express basis to withhold information on their initial disclosures. *See supra* n.2; *Fraije v. Clinton*, No. 8:10–CV–514, 2010 WL 5464802, at *2 (N.D.N.Y. Dec. 29, 2010) (Rule 12(e) "is not a vehicle to advance objections, which cannot support a Rule 12(b)(6) motion, in order to defer a defendant's time to answer and delay the progress of the action").

## II.   DEFENDANTS MISCHARACTERIZE THE FTC'S BURDEN UNDER SECTION 13(B) OF THE FEDERAL TRADE COMMISSION ACT.

Citing almost exclusively to Sherman and Clayton Act cases, Defendants assert that the FTC has not met its "fundamental burden" of defining a relevant antitrust market. *See* Defs.'

Mem. Supp. at 7; *see also id.* at 1 ("the FTC has the burden to define this market as the first step in the analysis under Section 7 of the Clayton Act").[4] To be clear, the FTC has defined a relevant product market of "accessible luxury" handbags, with nearly nine pages of detailed allegations relying heavily on Defendants' own documents and statements (Compl. at ¶¶ 28-45), including those in which Defendants themselves discuss who is in and out of the "accessible luxury" handbags market. *See* Compl. at ¶ 33. Even so, defining a relevant market is a matter of proof in a Section 7 case on the merits, which this case is not. *See IQVIA*, 2024 WL 81232, at *24 ("as the Court has already discussed, the burden on the FTC in this litigation is lower than the burden it will face in the administrative proceeding"). And even if it were, Defendants have not attacked the legal sufficiency of the FTC's allegations through a Rule 12(b)(6) motion. *See Akridge v. Whole Foods Mkt. Grp., Inc.*, No. 20 CIV. 10900 (ER), 2022 WL 955945, at *4 (S.D.N.Y. Mar. 30, 2022) (distinguishing 12(e) motions, which deal with unintelligible drafting, from 12(b), which deals with legal insufficiency).

As Judge Ramos explained following a two-week evidentiary hearing in the most recent

---

[4] The following cases cited by Defendants involved claims under the Sherman Act or its New York state equivalent: *Apotex Corp. v. Hospira Healthcare India Priv. Ltd.*, No. 18-CV-4903 (JMF), 2020 WL 58247 (S.D.N.Y. Jan. 6, 2020); *Bayer Schering Pharma AG v. Sandoz, Inc.*, 813 F. Supp. 2d 569 (S.D.N.Y. 2011); *Moccio v. Cablevision Sys. Corp.*, 208 F. Supp. 2d 361 (E.D.N.Y. 2002); *Radiancy, Inc. v. Viatek Consumer Prod. Grp.*, 138 F. Supp. 3d 303 (S.D.N.Y. 2014), *as amended* (Apr. 1, 2014); *Nat'l Gear & Piston, Inc. v. Cummins Power Sys., LLC*, 861 F. Supp. 2d 344 (S.D.N.Y. 2012); *Michael E. Jones, M.D., P.C. v. UnitedHealth Grp., Inc.*, No. 19-CV-7972 (VEC), 2021 WL 4443142 (S.D.N.Y. Sept. 28, 2021), and *United States v. Visa U.S.A., Inc.*, 344 F.3d 229 (2d Cir. 2003). The following cases cited by Defendants were merger challenges on the merits under Section 7 of the Clayton Act: *City of New York v. Group Health Inc.*, 649 F.3d 151, 154 (2d Cir. 2011), *United States v. Oracle Corp.*, 331 F. Supp. 2d 1098 (N.D. Cal. 2004), and *United States v. United States Sugar Corp.*, 73 F.4th 197 (3d Cir. 2023). Only *FTC v. Qualcomm*, 969 F.3d 974 (9th Cir. 2020) and *IQVIA* involved Section 13(b) of the Federal Trade Commission Act, 15 U.S.C. § 53(b), and, of those two cases, only *IQVIA* involved the FTC seeking a preliminary injunction to pause a merger and preserve the status quo while it adjudicated the legality of the merger in an administrative proceeding.

Section 13(b) case in this district: "The FTC does not need to prove the merits of its case to obtain a preliminary injunction under section 13(b). As that standard pertains to the market definition inquiry, then, it is 'not necessary at this point' for the FTC to *prove* the [relevant product] market." *IQVIA*, 2024 WL 81232, at *24 (quoting *Whole Foods*, 548 F.3d at 1041) (emphasis in original); *accord Whole Foods*, 548 F.3d at 1036 (FTC does not "necessarily need to settle on a market definition at this preliminary stage"). Moreover, as is the case here (*see* Compl. ¶¶ 48-63), "a merger between two close competitors can sometimes raise antitrust concerns due to unilateral effects in highly differentiated markets. In such a situation, ***it might not be necessary to understand the market definition to conclude a preliminary injunction should issue***." *Whole Foods*, 548 F.3d at 1036 n.1 (emphasis added); *accord United States v. Manufacturers Hanover Trust Co*., 240 F. Supp. 867, 923, 955 (S.D.N.Y. 1965) (rejecting government's proposed market definition yet permanently enjoining a merger after finding that "elimination of substantial competition previously existing between the parties . . . establishes a reasonable probability of a substantial lessening of competition, violative of § 7 of the Clayton Act").

In assessing relevant product markets, the Supreme Court has identified multiple "practical indicia," including "industry or public recognition of the [relevant market] as a separate economic entity, the product's peculiar characteristics and uses, unique production facilities, distinct customers, distinct prices, sensitivity to price changes, and specialized vendors." *Brown Shoe*, 370 U.S. at 325. "All the factors need not be satisfied for the Court to conclude that the FTC has identified a relevant market." *IQVIA*, 2024 WL 81232, at *13 (citing *FTC v. Staples, Inc.*, 970 F. Supp. 1066, 1075 (D.D.C. 1997); *see also id.* at *24. Moreover, the factors must be "viewed in totality" and not in isolation—"one factor is not dispositive." *FTC v.*

*Surescripts, LLC*, 665 F. Supp. 3d 14, 43 (D.D.C. 2023) ("Even if there is a factual dispute as to the application of this factor, one factor is not dispositive, and all the *Brown Shoe* factors viewed in totality support the FTC's definition of the relevant markets.").

Here, the FTC has more than adequately pled the relevant product is "accessible luxury" handbags based on the *Brown Shoe* practical indicia.[5] Specifically, the FTC has pled that the industry, and the parties, recognize "accessible luxury" handbags as a distinct market (Compl. at ¶¶ 28-32), with distinct pricing (*id.* at ¶¶ 33-35), distinct customers (*id.* at ¶¶ 36-37), peculiar characteristics and uses (*id.* at ¶¶ 39-41), and unique production facilities (*id.* at ¶¶ 42-43). In their brief, Defendants march through these factors in isolation, cherry-picking certain portions of the complaint to selectively, and unilaterally, unseal. *E.g.*, Defs.' Mem. Supp. at 7 ("'entry points of $1,000+'"; "the Complaint also cites to a different Tapestry document indicating a 'product focus' in North America 'between $150-500'") & 8 ("The Complaint alleges that approximately half of Coach and Michael Kors customers have household incomes of less than $80,000 . . . . [and that] 'over 60 percent of consumers of true luxury brands . . . had household income in excess of $100,000'").[6] Defendants' approach is not only incorrect under the law, *see*

---

[5] Defendants demand more specifics regarding what constitutes a handbag—a product that they tout to investors as generating billions of dollars of revenue each year for Defendants. *See, e.g.*, Tapestry 10-K For the Fiscal Year Ended July 1, 2023 at 8, *available at* https://tapestry.gcs-web.com/static-files/30d5e04e-5b63-4450-ae82-51a3a68c3d8c. In doing so, they point to a purported definition from the FTC's pre-complaint investigation. Defs.' Mem. Supp. at 6. Defendants provide no citation for this assertion, and their brief is unsupported by any affidavit, so the FTC can only guess that Defendants may be referring to the definitions of terms in certain requests for documents that the FTC issued at the very beginning of its investigation of the Proposed Acquisition, over six months ago.

[6] Pursuant to this Court's guidance at the April 29, 2024 conference, the FTC has asked Defendants for a meet and confer regarding unsealing the complaint. In the meantime, the FTC respectfully submits that it is improper for Defendants to unilaterally unseal portions of the complaint.

*Surescripts, LLC*, 665 F. Supp. 3d at 43, but also goes to show that Defendants can certainly

answer the complaint now and do not need a more definite statement to do so.

Even when attacking each of the *Brown Shoe* factors in isolation, Defendants misconstrue

the law. They contend that relying on ordinary-course documents to establish the relevant

product market "is not how antitrust law works" (Defs. Mem. Supp. at 3), but point to no

authority to support this remarkable proposition, which has no basis at all in the caselaw. As

Judge Ramos pointed out in *IQVIA*, "Courts regularly consider ordinary course documents when

defining the relevant market," 2024 WL 81232, at *20, and that is certainly true when one of the

*Brown Shoe* factors at issue is industry recognition as a distinct market. *Id.* (FTC "point[ed] to

ordinary course documents in which Defendants referred to HCP programmatic advertising as a

distinct market"). Here, Defendants' own documents, and statements to investors, establish this

industry recognition. Compl. at ¶¶ 28-31.

Defendants later contend, again without any citation, that "most antitrust complaints that

seek to narrow a market normally allege why *similar products* offered at *different price points*

are not reasonably interchangeable" (Defs.' Mem. Supp. at 7) (emphases in original), but the

*Brown Shoe* factors are one way of proving that separate products belong in separate product

markets. *Whole Foods*, 546 F.3d at 1046 ("*Brown Shoe* lists 'distinct prices' as only one of a non-

exhaustive list of seven 'practical indicia' that may be examined to determine whether a separate

market exists.") (op. of Tatel, J.). Moreover, contrary to Defendants' insinuations (Defs.' Mem.

Supp. at 7) even at trial on the merits in the administrative court the FTC does not need to *prove*

precise pricing thresholds. *E.g.*, *Lancaster Colony Corp.*, 434 F. Supp. 1088, 1093 (S.D.N.Y.

1977) ("low or moderately-priced glassware, intended for everyday use, differs from fine

glassware, such as lead crystal, sold at higher prices and marketed through different channels");

*United States v. Bertelsmann SE & Co. KGaA*, 646 F. Supp. 3d 1, 25, 27 (D.D.C. 2022) ("The defendants' excessive concern over the specific dollar threshold betrays a misunderstanding of why the threshold was chosen. The market that the government seeks to define is the one for anticipated top-selling books, and the $250,000 demarcation was adopted only as an analytical tool to help it group together the books in question. . . . the $250,000 cutoff is merely useful; it is not intended to be a rigid bright line, but rather is helpful '[f]or analytical purposes' to facilitate the assessment of anticompetitive effects." (quoting *FTC v. Staples, Inc.*, 190 F. Supp. 3d 100, 118 & n.10 (D.D.C. 2016)).[7] The same is true of Defendants' arguments about the FTC's allegations regarding "distinct customers" under *Brown Shoe. Compare* Defs.' Mem. Supp. at 8-9, *with Whole Foods*, 538 F.3d at 1049 ("The law does not require an exclusive class of customers for each relevant submarket.") (quoting *Photovest Corp. v. Fotomat Corp.*, 606 F.2d 704, 714 (7th Cir. 1979)) (op. of Tatel, J.).

In sum, there is nothing in the law that requires the precision that Defendants seek—and certainly not at the pleading stage. And, in any event, the nine pages dedicated to relevant market in the FTC's complaint adequately defines the relevant product market of "accessible luxury" handbags.

## III.   DEFENDANTS ARE NOT ENTITLED TO PREMATURE CONTENTION INTERROGATORIES AND EXPERT DISCOVERY.

Perhaps recognizing that the complaint more than adequately defines the relevant product market under the Federal Rules, Defendants move, in the "alternative," for what they really seek

---

[7] Indeed, in *Bertelsmann*, the DOJ did not even allege the $250,000 threshold for "higher advances" that it ultimately presented at trial on the merits, merely pleading that "[t]he authors of anticipated top-selling books generally command higher advances than other authors." Quinn Decl., Ex. I at ¶ 37.

through their motion: a contention interrogatory of "Define the product market you intend to

prove at trial." Defs.' Mem. Supp. at 10-11. Again, the merits trial regarding the legality of the

Proposed Acquisition is not in this proceeding—it is in the FTC's administrative proceeding.

*IQVIA*, 2024 WL 81232, at \*9. To the extent that what Defendants actually seek is a contention

interrogatory of "Define the product market you intend to present at the evidentiary hearing in

this Section 13(b) proceeding," the time to raise that request was last Wednesday, May 1, 2024,

when the Court ordered the parties to provide any disputes regarding the CMSO, so *both* parties

could proceed with discovery.[8] And even if that were not the case, Defendants' request is still

premature both because of this District's prohibition on early contention interrogatories *and*

because it seeks early expert discovery and attorney work product.

Local Rule 33.3(c) "anticipates that contention interrogatories should generally not be

served during the early stages of discovery and, indeed, courts have discretion to order that such

interrogatories not be answered until other discovery is substantially completed." *Pratt v. Atalian

Global Servs. Inc. et al.*, No. 20 Civ. 3710 (PAE), 2021 WL 1234253, at \*2 (S.D.N.Y. Apr. 2,

2021) (quoting *Trib. Co. v. Purcigliotti*, No. 93 Civ. 7222 (LAP) (THK), 1997 WL 540810, at \*1

(S.D.N.Y Sept. 3, 1997) (alterations omitted); *accord CG3 Media, LLC v. Belleu Technologies,

LLC*, No. 1:21-cv-04607-MKV, 2022 WL 1172499, at \*2 (S.D.N.Y. Apr. 20, 2022); *In re

Facebook, Inc. Sec. Litig.*, MDL No. 12-2389, 2016 WL 5080152, at \*3 (S.D.N.Y. May 10,

2016); *Erconia v. Bissoon*, No. 07 Civ. 8696 (DLC), 2011 WL 3904600, at \*8 (S.D.N.Y. Aug. 26,

2011), *aff'd* 458 Fed. App'x 58 (2d Cir. 2012)). Contention interrogatories are appropriately

reserved until "after discovery so that they may narrow issues already known, thus saving both

---

[8] Defendants also seek a response to this contention interrogatory within seven days of the
Court's ruling (Defs.' Mem. Supp. at 11), which conflicts with the deadlines for interrogatory
responses in the CMSO that Defendants proposed and the FTC accepted. Dkt. 71 at 5.

the parties and the court from inefficiency and unnecessary delay." *In re Facebook*, 2016 WL 5080152, at *3. Local Rule 33.3 promotes judicial efficiency and "assures that sufficient discovery has been completed such that responses will narrow, not bloom, relevant issues." *Id.* at *4; *see also Fort Worth Emps. Ret. Fund v. J.P. Morgan Chase & Co.,* 297 F.R.D. 99, 110 (S.D.N.Y. Dec. 16, 2013) ("[C]ontention interrogatories help the parties focus their arguments after discovery is complete").

In antitrust cases, discovery requests that seek individual market share calculations and the methodology by which a party may have calculated those shares implicate attorney work product and are not proper during fact discovery. *United States v. Anthem, Inc.*, No. 16-cv-1493 (ABJ), 2016 WL 11755527, at *1-2, 8 (D.D.C. Sept. 30, 2016) (denying motion to compel interrogatory to the extent it sought "market share calculations and the methodology used to reach those calculations" on the basis of attorney work product), *R. & R. adopted by United States v. Anthem*, No. 16-cv-1493 (ABJ), 2016 WL 11755535 (D.D.C. Oct. 14, 2016). "The market shares themselves, as well as any HHI calculations, are the product of legal and economic analyses performed by counsel to the United States and/or their agents in preparation for this litigation. Such analyses are precisely the type of 'conclusions' which Rule 26(b)(3)(B) prohibits a court from ordering disclosed." *Id.* at *5; *see also id.* at nn. 6-7. The proper time for discovery of this information is during expert discovery. *Id.* at *7 ("The expert evidence in this case likely will be the key to the outcome of the case. Notwithstanding the calculations in the Complaint on market share, ultimately it will be the expert evidence that controls.").

Here, Defendants concede that the Local Rules reserve the use of contention interrogatories until "the conclusion of other discovery," but nonetheless argue a premature contention interrogatory is appropriate "given the short discovery period in this accelerated

18

proceeding." Defs.' Mem. Supp. at 10-11 (citing Loc. Civ. R. 33.3(c)). Defendants cite no case for the proposition a compressed discovery schedule entitles them to contention interrogatories *prior to fact discovery*—nor could they, because Defendants' demand that the FTC "[d]efine the market product market you intend to prove at trial" *now* (*id*. at 11)—that is, prior to development of these issues through discovery—will result in exactly what Rule 33.3 is designed to avoid: inefficiency and unnecessary delay. In fact, the instant motion prejudices the FTC which is unable to begin discovery on Defendants' purported defenses until Defendants file their answers to the FTC's complaint. Nothing about the accelerated schedule inherent in this Section 13(b) evidentiary hearing proceeding—to which Defendants agreed (Dkt. 68 & 69)—suggests it is appropriate to dispense with the Southern District of New York's policy that contention interrogatories be served "at the conclusion of other discovery." *See* Loc. Civ. R. 33.3(c).

Moreover, to the extent that Defendants' early contention interrogatory asks for the FTC "to define the scope of its alleged relevant market using whatever methodology the FTC relied upon in deciding to sue" (Defs.' Mem. Supp. at 4; *see also* Quinn Decl. at ¶ 7), that seeks impermissible discovery of attorney work product and premature expert discovery and should be denied on that basis as well. *Compare Anthem*, 2016 WL 11755527, at *5 ("Both the market share calculations and the methodology that the United States used to determine these shares are likely to 'reveal or provide insights into the 'mental processes of the attorney' in the analysis and preparation' of this case" (quoting *Shapiro v. U.S. Dep't of Justice*, 969 F. Supp. 2d 18, 32 (D.D.C. 2013)) & nn. 6-7, *with* Defs.' Mem. Supp. at 4-5 (stating that the FTC "could have included identifying a price range for 'accessible luxury' handbags or explaining how the agency arrived at its alleged calculations of Defendants' market shares, and alleged increases in market concentration").

In view of this district's general policy against issuing contention interrogatories prior to the conclusion of other discovery, Defendants' failure to timely raise the issue by the Court's deadline, and the fact that Defendants seek Plaintiff's work product and expert analysis, Defendants' request for an early contention interrogatory should be denied.

## **<u>CONCLUSION</u>**

For the foregoing reasons, the Commission respectfully requests that Defendants' Motion for a More Definite Statement or, in the Alternative, for One Contention Interrogatory be denied.

Dated: May 8, 2024                    Respectfully submitted,


                                      *S/ Abby L. Dennis*
                                      Abby L. Dennis (*pro hac*)
                                      DC Bar No. 994476
                                      Federal Trade Commission
                                      600 Pennsylvania Avenue, N.W.
                                      Washington, DC 20580
                                      Phone: 202-326-2494
                                      Email: adennis@ftc.gov

                                      Peggy Bayer Femenella (DC Bar No. 472770) (*pro hac*)
                                      Nicole Lindquist (DC Bar No. 975593) (*pro hac*)
                                      Laura Antonini (CA Bar No. 271658) (*pro hac*)
                                      Brandon Boxbaum (DC Bar No. 1615988) (*pro hac*)
                                      Peter Colwell (DC Bar No. 100287) (*pro hac*)
                                      Kassandra DiPietro (MN Bar No. 0403547) (*pro hac*)
                                      Frances Anne Johnson (MD Bar – No Number) (*pro hac*)
                                      Sarah Kerman (DC Bar No. 90017957) (*pro hac*)
                                      Andrew Lowdon (DC Bar No. 230095) (*pro hac*)
                                      Danielle Quinn (NY Bar No. 5408943)
                                      Blake Risenmay (WA Bar No. 52888) (*pro hac*)
                                      Victoria Sims (DC Bar No. 1006974) (*pro hac*)
                                      Timothy Singer (DC Bar No. 1048769) (*pro hac*)

                                      *Counsel for Plaintiff Federal Trade Commission*