EXHIBIT D

O4TNTAPC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

FEDERAL TRADE COMMISSION,

      Plaintiff,

      v.              24-CV-3109 (JLR)

TAPESTRY, INC., CAPRI HOLDINGS
LIMITED,

      Defendants.      Conference

------------------------------x
                 New York, N.Y.
                 April 29, 2024
                 2:30 p.m.

Before:

                 HON. JENNIFER L. ROCHON,

                 District Judge

                 APPEARANCES
FEDERAL TRADE COMMISSION
   Attorneys for Plaintiff
BY:  ABBY L. DENNIS
     DANIELLE C. QUINN
     LAURA ANTONINI
     PEGGY FEMENELLA

LATHAM & WATKINS, LLP
   Attorneys for Defendant Tapestry
BY:  ALFRED C. PFEIFFER, JR.
     AMANDA P. REEVES
     IAN R. CONNER
     LINDSEY CHAMPLIN

WACHTELL LIPTON ROSEN & KATZ
   Attorneys for Defendant Capri
BY:  JONATHAN M. MOSES
     ELAINE P. GOLIN

O4TNTAPC

```
 1              (Case called)
 2              THE COURT:  Okay.  Counsel, good afternoon.  Thank you
 3    for moving this conference up a couple of hours.  I was
 4    scheduled to be on trial which resolved, so I didn't need to
 5    put you toward the end of the day and could see you earlier.
 6              Why don't I take appearances please.
 7              For the plaintiff?
 8              MS. DENNIS:  Good afternoon, your Honor, Abby Dennis,
 9    for the Federal Trade Commission.  With me I have my colleagues
10    Peggy Femenella, Laura Antonini and Danielle Quinn.
11              THE COURT:  Good afternoon, everyone.
12              And for defense counsel?
13              MR. PFEIFFER:  Good afternoon, your Honor, Alfred
14    Pfeiffer of Latham & Watkins on behalf of Tapestry.  With me
15    are my partners Amanda Reeves, Lindsey Champlin and Ian conner.
16    We also have present with us, today, your Honor, general
17    counsel of Tapestry, David Howard.
18              THE COURT:  Good afternoon.
19              And for Capri?
20              MR. MOSES:  Good afternoon, your Honor.  Jonathan
21    Moses from Wachtell, Lipton, Rosen & Katz and with me is my
22    partner Elaine Golin, my partner Damian Didden and our general
23    counsel Krista McDonough.
24              THE COURT:  Good afternoon, everyone.
25              Okay.  We are here sort of for an initial pretrial
```

O4TNTAPC

1    conference.  This is on an expedited schedule, so I wanted to

2    get you in as soon as possible.  I thank you for meeting and

3    conferring even before we met today and sending me the letter

4    that I received this morning at ECF No. 68 that gives me a

5    sense of a schedule.  Thank you for getting started on that.

6        My intention this afternoon is to hear just a little

7    bit from the parties about the case from their clients'

8    perspective, which is what I normally do at an initial pretrial

9    conference.  Then I am going to want to talk a bit about

10   scheduling.

11       In your presentation you may also want to give me

12   information about what is to come, when you need decisions.  I

13   have looked at some earlier other cases that were brought by

14   the FTC to sort of figure out the timing that's generally in

15   place for some of those, but it will help me to hear directly

16   about what is anticipated in this particular case.  We will

17   talk about scheduling and hopefully get some outlines about

18   what we can put in place there.

19       Then certainly I am happy to talk about anything else

20   the parties have in mind.  I am especially curious about

21   whether there are any anticipated motions, like a motion to

22   dismiss, whether there's any motions regarding unsealing

23   anything and when to expect those.

24       I will want to work in prehearing briefs and

25   posthearing briefs to the preliminary injunction, so that is

1  something we should talk about as well.

2          But, again, I will hear from you first, and we can

3  talk a little bit more about that, but why don't we just set

4  the stage a bit and talk about why we are here.

5          I presume I will hear from you, Ms. Dennis.

6          MS. DENNIS:  Yes, your Honor.

7          THE COURT:  Thank you.

8          MS. DENNIS:  I thought I would start first with

9  talking about the Section 13(b) proceeding here and how that

10  interplays with the administrative proceeding and then moving

11  on to our allegations.

12          Under the FTC Act, the FTC has authority to adjudicate

13  the lawfulness of tapestry's proposed acquisition of Capri

14  under Section 7 of the Clayton Act and Section 5 of the FTC

15  Act.

16          Last Monday, in a bipartisan 5-0 vote, the FTC voted

17  to initiate an administrative proceeding where those issues

18  will be adjudicated on the merits.  That's the merits trial.

19  You will also hear it referred to as the Part 3 trial.

20          Pursuant to the FTC rules, it will start in

21  approximately five months after issuance of the administrative

22  complaint, on September 25, 2024, in front of an administrative

23  law judge, who has already issued a protective order, with up

24  to 210 hours for the presentation of evidence.

25          Here, the FTC is proceeding under Section 13(b) Of the

O4TNTAPC

1    FTC Act for a preliminary injunction to pause the consummation

2    of Tapestry's acquisition of Capri for a limited period pending

3    the outcome of the administrative proceeding.

4            This is not the merits proceeding or the trial.

5    Instead, in a Section 13(b) proceeding the district court must

6    do two things:

7            One, determine the FTC's likelihood of success on the

8    merits in the administrative proceeding, and the standard there

9    is a serious question standard.  Has the FTC raised serious

10    questions about the antitrust merits that warrant thorough

11    investigation in the first instance by the FTC.

12            And, two, the district court must weigh the equities.

13            I will refer the Court to Judge Ramos' recent decision

14    in FTC v. IQVIA from just last December for articulation of the

15    standard -- that's 2024 WL 81232 -- and the good discussion of

16    the legal standard in Section 13(b) proceedings.

17            As far as the issues in this case, as detailed in our

18    complaint, we think there is ample evidence to establish that

19    the effect of the merger, in the words of Section 7 of the

20    Clayton Act, may be substantially to lessen competition or tend

21    to create a monopoly.

22            For one, it would eliminate fierce head-to-head

23    competition between Coach, Kate Spade and Michael Kors in

24    handbags.  The evidence shows that these brands compete on

25    everything from prices, to discounting, to promotions, to

1    sustainability efforts, to brick-and-mortar experience, to

2    advertising, to even retail employee wages.

3            They monitor and copy each other on many facets of

4    competition, and this monitoring occurs at the highest level of

5    each company.  Independently, a combination of these two firms

6    will lead to undue concentration in the market for accessible

7    luxury handbags.

8            So what is accessible luxury?

9            It is a term that was coined by Coach 20 years ago and

10   adopted by industry participants since to define handbags that

11   are made with quality but at an affordable price, which

12   distinguishes them from the true luxury handbags, like the

13   Chanels of the world, that retail in the thousands of dollars

14   and are made in Europe, and the mass market bags made in China

15   that do not boast this quality and are cheaper.

16           These three brands are the biggest accessible luxury

17   handbags in the United States, and combining them would create

18   a firm with over 50 percent of that market.

19           Now, in response to that, you may hear a lot from the

20   defendants in this case about the large number of competitors

21   in that market.  We don't dispute that there's a long tail of

22   very small competitors, but none of those competitors comes to

23   close to defendants' brands, which are all found throughout

24   this country and have been the dominant brands in the space for

25   a long time.  No one will be able to scale to replace the loss

O4TNTAPC

1   of competition if this merger proceeds.

2           In sum, we have ample evidence to demonstrate a loss

3   of head-to-head competition and an increase of undue

4   concentration on the merits, but again note that here the

5   district court need only find serious questions about one of

6   these two theories of harm for the FTC to be entitled to a

7   preliminary injunction.

8           Thank you, your Honor.

9           THE COURT:  Before you sit, is discovery proceeding in

10  the administrative proceeding at the same time as it will

11  proceed here?

12          MS. DENNIS:  Yes, your Honor.  It will proceed

13  concurrently as part of the case management order that the

14  parties will negotiate.  We will have provisions where

15  discovery in each can be used for the other.

16          THE COURT:  Good.  Okay.

17          Is the goal to get a decision from me prior to the

18  September 25 proceeding?

19          MS. DENNIS:  The FTC's flexible on that, your Honor.

20  I don't want to speak to nonconfidential information in court

21  here about the merger agreement and the dates that are in that

22  for the parties.  I am not sure that's public.  But on our end

23  we have plenty of time.  The FTC proceeding will occur

24  September 25, and we're flexible as to when your Honor provides

25  the preliminary injunction order.

O4TNTAPC

```
 1              THE COURT:  Okay.  Thank you.
 2              You said you anticipate the administrative proceeding
 3   being about 210 hours?
 4              MS. DENNIS:  That's the cap on it by the rules and
 5   regulations of the FTC.  They normally last three to four
 6   weeks.
 7              THE COURT:  Okay.  Thank you.
 8              MS. DENNIS:  We have not met and conferred about that
 9   yet.
10              THE COURT:  That's fine.
11              Before I hear from your colleagues, I do have this
12   letter.  Do you agree that the preliminary hearing injunction
13   hearing before me should take about 20 hours per side?
14              MS. DENNIS:  Yes, your Honor.
15              THE COURT:  Is that what's been agreed upon?  By
16   "side" meaning both defendants would use a total of 20 hours.
17              MS. DENNIS:  Correct, per side.
18              THE COURT:  Okay.
19              It is your understanding that you would still continue
20   to meet and confer to come up with a proposed case management
21   plan for the internal dates by which discovery would be
22   exchanged, right?  Here this is a broad "when discovery is
23   closing" proposal.  Is that correct?
24              MS. DENNIS:  Correct, your Honor, and certain other
25   items on the scope of discovery housekeeping issues.  We intend
```

1    to meet and confer on those -- we have been -- and present the

2    proposed case management order to your Honor by this Friday at

3    5:00 p.m. along with the disputes we might still have.

4            THE COURT:  Good.  Would your timing change -- I

5    wanted to let you know for the preliminary injunction hearing

6    I'm leaning toward not having directs by affidavit, which is

7    typically what I do in nonjury proceedings, but I think it

8    might be helpful to hear the directs in this case instead of

9    having them by affidavit.

10            Would that still fall within your 20 hours per side?

11            MS. DENNIS:  It will for the FTC, your Honor.

12            THE COURT:  Okay.  Good.  Thank you.  Thank you very

13    much, Ms. Dennis.  I may come back.

14            MS. DENNIS:  Thank you, your Honor.

15            THE COURT:  Let me hear from Tapestry, please.

16            MR. PFEIFFER:  Thank you, your Honor.

17            I guess I will start in the same place where counsel

18    for the FTC started, which is I guess on some level what this

19    process would look like, what is it is you are undertaking.

20            I want to rebut any notion that this is in any way

21    perfunctory or a rubber-stamp process.  The IQVIA decision that

22    counsel cited to expressly rejects that and says this is not a

23    rubber-stamp process.

24            THE COURT:  Rest assured I don't believe it is a

25    rubber-stamp process.  You may proceed.

O4TNTAPC

1          MR. PFEIFFER:  Thank you, your Honor.  We hope so.

2          The other thing that plays into that is the timing of

3     the FTC's internal Part 3 proceedings, because they are quite

4     lengthy.  Even if they don't take anywhere near 210 hours -- I

5     certainly hope not -- having been through that process before,

6     it goes on for months because there is an initial proceeding

7     before an administrative law judge.  That's where the 210 hours

8     come in.

9          Then there is an extensive period for posttrial

10    proposed findings of fact and conclusions of law and then a

11    lengthy period where the administrative law judge has to issue

12    a recommended decision after that, which the ALJ has the power

13    to *sua sponte* extend for good cause, and which in the last Part

14    3 proceeding the ALJ took advantage of that opportunity and did

15    extend.

16          At that point it then gets reviewed *de novo* by the FTC

17    commissioners sitting at that point as judge in a case they've

18    already sat in as a prosecutor voting out the complaint among

19    other issues.  That process is again quite lengthy.  Without

20    getting into the specific case, I can tell you with assurance

21    that process, even if not extended, will outstrip the closing

22    outside date and kill the deal.

23          That's why from our perspective this is our one chance

24    for an actual clear-eyed, prompt, and impartial look at this

25    transaction.  So we take this very seriously.  That is not to

O4TNTAPC

1    impugn the FTC.  I am sure they do too.  But from our

2    perspective, there is nothing lessened about the standard.  I

3    think in IQVIA the decision actually looks quite closely at the

4    facts of that case in coming to its conclusion, as have all the

5    other 13(b) cases.

6          One big issue on the merits that also relates to the

7    process, you heard some allusion to relevant markets in this

8    case.  IQVIA makes very clear that it is the FTC's burden to

9    prove that there is a harm in a specific relevant market.  The

10   complaint as written is handicapping our ability at this point

11   to defend ourselves, because we literally cannot tell what the

12   parameters of the relevant market are.

13         There was a reference to an accessible luxury handbag

14   market, but that is nowhere in the complaint actually defined.

15   If were you to compare this to other cases, the FTC is way more

16   precise in their typical case in saying what the metes and

17   bounds of a market are.

18         We don't know, for example, whether the FTC believes

19   that this market is defined by a price bracket.  They cite in

20   the complaint to some of our documents that talk about a price

21   bracket.  But I will note as just one piece of evidence on this

22   point that they cite two different documents that address the

23   issue inconsistently with one another.  They are not the same

24   price band even when they're citing us.  So we are kind of

25   shooting in the dark as to what this accessible luxury handbag

O4TNTAPC

1    market is.

2           The labor market, again with respect, is even less

3    well defined.  There is mention in the complaint about all of

4    the 33,000 combined-entity employees around the world being

5    adversely impacted by this merger.  That would imply a labor

6    market in which we are supposed to have market power sufficient

7    to harm janitors up to C-suite employees worldwide.  That

8    doesn't seem to make sense to us, and I assume that is not what

9    they intend.  We literally don't know on the complaint.

10          So when you asked about pretrial motions, we prefer

11   not to do it, but if we can't get some commitment to a prompt,

12   defined statement of what markets we are actually supposedly

13   shooting at, we will have to bring and will seek to bring on an

14   expedited basis a motion for a more definite statement.  I

15   think it really goes to the level of our ability to defend

16   ourselves.

17          THE COURT:  Are you currently in discussions with the

18   FTC about obtaining that definition that you are seeking?

19          MR. PFEIFFER:  We haven't made that part of this

20   meet-and-confer process.  We have in meetings with staff and

21   with the commissioners precomplaint very much asked for that

22   and have not obtained it.

23          THE COURT:  Thank you.

24          MR. PFEIFFER:  One final point on that point, your

25   Honor.  In some cases there can be the redress of "find out

O4TNTAPC

1    through discovery."  That really won't work here for two

2    reasons.  It is a very compressed schedule, and under the

3    Southern District's local rules we can't send contention

4    interrogatories until the end of the process.  That's really

5    all we are saying is tell us what your markets are so we can

6    know what we are dealing with.

7           The final point I think procedurally, your Honor, is

8    there are, as counsel for the FTC mentioned, quite a number of

9    competitors, no matter how you slice this definition of an

10    accessible luxury handbag market, scores of competitors out

11    there.

12           The FTC has graciously and promptly turned over their

13    investigative file to us.  They didn't actually get data from

14    very many of those folks.  We are going to have to do that, but

15    again they can choose how they want to present their case, but

16    we don't have to live with their choice.  We get to do our own.

17    We are going to have a quite of number of document subpoenas to

18    send third parties.  It is part of why we are actually very

19    glad that we are able to work out an extended version of what

20    the FTC had initially proposed for the discovery cutoff so that

21    we would have more time.  Because third parties you have to

22    sometimes fight with them to get their information.

23           That's a process that we would like to see start as

24    soon as we can and without any limitations other than those

25    imposed by the Federal Rules of Civil Procedure.  I am hoping

O4TNTAPC

1    we can leave here today with that approval, that we can start

2    those subpoenas.

3            We will obviously continue, as counsel for the FTC

4    said, to meet and confer and work out the rest of the details

5    of what discovery can take place, what the deadlines we have

6    worked out will look like, but that one I feel like we need to

7    start right away.

8            With all that said, I guess I have said some about the

9    merits, but from our perspective, your Honor, this is an

10   intensely competitive marketplace.  I think there was a

11   citation from some outside observer in the complaint to the

12   notion that there was a duopoly in handbags.  I mentioned that

13   to my wife and she just about spit at the notion.  There are so

14   many competitors and there is so much ease of entry into this

15   marketplace that we believe on the merits, when all the

16   evidence is actually presented to you, you will join us in the

17   conclusion that this is not a market that any two competitors,

18   much less Tapestry and Capri, could dominate by combining.

19           It is more driven by consumers' needs than the typical

20   market.  Our CEO likes to say that the consumer sets the price.

21   I think what's been happening in the marketplace with Michael

22   Kors, which has been seeing relatively hard times, proves that

23   case.

24           You can't dictate price.  Combining, we would not be

25   able to dictate the price.  And part of that is because there

O4TNTAPC

1    is so much competition and so much innovation, including from

2    people who suddenly show up on the arms of a celebrity on

3    social media and become a brand.

4         We can't ignore that.  We don't have the ability to

5    ignore that.  We are constrained by forces above us and below

6    us and emerging all the time.  We believe that when the case is

7    presented to your Honor you will join in that opinion.

8         THE COURT:  One moment, Mr. Pfeiffer.

9         MR. PFEIFFER:  Yes, your Honor.

10        THE COURT:  What is your view toward appropriate

11   timing in this case and when you think a decision should be

12   rendered.  I need to move backwards from that to figure out the

13   schedule.

14        MR. PFEIFFER:  Yes, your Honor.  We don't believe that

15   the date that is currently set for the FTC to start its trial

16   should be an artificial impediment to you taking the time that

17   you need to get it done.  From our perspective, given the

18   outside date of the parties' transactions, you have

19   substantially more time to get a decision out.

20        Again, we don't see a need for the FTC trial to start

21   until such time as you have a chance to assess that, but if it

22   does, we will take appropriate steps and I guess deal with

23   that.  But from our perspective we think you have the time well

24   beyond September to make your decision.  We don't want to rush

25   you in your decision.

1          THE COURT:  Okay.  I was looking at your schedule and

2     trying to determine when you needed a determination.  That may

3     mean everyone's end of August is going to be a little safer

4     than it was when I first came in here this afternoon.

5          Thank you very much.

6          I know we didn't discuss this yet, but any thoughts to

7     how we are going to be dealing with unsealing eventually in

8     terms of the complaint?

9          MR. PFEIFFER:  I don't think the parties have really

10     had a chance to discuss that yet, your Honor.

11          THE COURT:  That is fine.

12          MR. PFEIFFER:  The literal answer to your question is

13     I have not given that a thought, but we will do so.

14          THE COURT:  That's fine.

15          Is it your view, again, that those 20 hours allotted

16     to your side for the hearing would still be sufficient if I

17     took direct examination not by affidavit but by actual

18     testimony?

19          MR. PFEIFFER:  We had in fact been anticipating live

20     testimony, your Honor.

21          THE COURT:  Perfect.  Good.  That's great.

22          All right.  Okay.  Thank you very much, Mr. Pfeiffer.

23          MR. PFEIFFER:  Thank you, your Honor.

24          THE COURT:  Ms. Golin or Mr. Moses.

25          MR. MOSES:  Good afternoon, your Honor.

O4TNTAPC

```
1                THE COURT:  Good afternoon.

2                MR. MOSES:  It is an honor for me to be before the

3     Court.

4                I won't repeat everything Mr. Pfeiffer said obviously,

5     but I do want to just make two points, which is that the first

6     is that the standard.  The decisions make clear, and the IQVIA

7     decision makes clear the Article III court brings its

8     independent judgment to bear on whether the FTC has shown that

9     there's substantial questions as to whether or not there is

10    anticompetitive effects from merger.

11               Only the Article III Court can enjoin a merger.  The

12    FTC cannot enjoin a merger.  The FTC after the lengthy process

13    that Mr. Pfeiffer set out and that process between the hearing

14    and the decision that the ALJ offers and the commission ruling

15    and then subject to circuit appeal and maybe even a Supreme

16    Court appeal can take a year or two.

17               That process can lead to divestiture, but it can't

18    enjoin the transaction.  If we are left to the Part 3

19    proceeding, we will never complete by the outside date.  That's

20    why these proceeding are so important.  This is the show.  This

21    is the case where it will be decided whether this merger goes

22    forward.  So we need that opportunity to put on our case, and

23    we so far have been working well with the FTC in doing that.

24               The second thing I want to just emphasize, because it

25    was interesting to me, Ms. Dennis began with closeness of
```

O4TNTAPC

1    competition.  The FTC has to begin with market.  All the cases

2    make clear that the sine qua non of a trial like this,

3    including anticompetitive effects, is first defining a market.

4        Closeness of competition, when there are lots of other

5    competitors, when there's ease of entry, when there are

6    hundreds of bags if you just search online, dozens of bags if

7    you walk the floor of Herald Square's Macy's, that's not an

8    anticompetitive merger no matter how closely they compete.

9        So, your Honor, it was very interesting to me that the

10   FTC started there.  We don't think they will be able to show a

11   market.  We also don't think they are going to be able to show

12   any anticompetitive effects from this merger.

13       This merger, is going to give an opportunity, as

14   Mr. Pfeiffer said, for Tapestry to see if it can revive the

15   Michael Kors brand, and only if the consumers perceive that

16   value in the brand can the price rise.  That is the truth of

17   the handbag market and that is the truth of brands.

18       So, your Honor, I second Mr. Pfeiffer and say we

19   believe when the full evidence is in both in terms of the

20   market participants the breadth of opportunities and the nature

21   of this market, you will conclude not to issue the injunction.

22       THE COURT:  Thank you.

23       A couple just follow-up questions.

24       Do you agree with your colleagues -- it sounds like

25   it's unanimous -- that the date upon which you need a

O4TNTAPC

1    determination from me is not prior to the September 24

2    administrative proceeding date?

3              MR. MOSES:  Your Honor, we do agree.  I will just note

4    those Part 3 proceedings are often kicked because people

5    realize -- the FTC's own rules provide that an Article III

6    proceeding, not surprisingly, should take precedence on its

7    administrative law proceeding.  And your Honor -- and I hope we

8    never come to this -- has the power to stay the FTC Part 3

9    proceeding.  I don't think it will ever come to this.  I think

10   we tried to respect that date by having the trial before then,

11   but I think your Honor should not view that as some drop dead

12   date for yourself.

13             THE COURT:  Thank you.

14             Also, do you agree with Mr. Pfeiffer that if I take

15   direct testimony live you would still fall within those 20

16   hours?

17             MR. MOSES:  We do.

18             As Mr. Pfeiffer said, we look forward to presenting

19   the witnesses to the Court.

20             THE COURT:  Good.  I think that's the better process

21   for this particular procedure.  Okay.  Thank you very much.

22             Let's talk schedule then a bit.

23             You can guess that I was going to move things up a bit

24   if you were anticipating me getting you a decision

25   mid-September.  Having a hearing that went until mid-September

O4TNTAPC

1    with a decision anticipated in mid-September was not a

2    realistic schedule on my side, so I was going to move you up.

3    But it also sounds to me like there's some significant

4    discovery that needs to take place, and I do want to make sure

5    that everyone has all the information that they need in order

6    to present this matter to me fully and fairly.

7            So the schedule that I have here then likely works for

8    the Court other than I don't see prehearing findings of fact

9    and posthearing findings of fact.  I am trying to figure out

10   when that would fall in.

11           I would like to have them in advance of a hearing so

12   that I can really work with those even before the hearing

13   begins.  So I am not sure if we should hash that out now or if

14   you want to talk about it and see.

15           Ms. Dennis, about how long would you need to do those?

16           Could you make the deadline for prehearing findings of

17   fact the same deadline as the plaintiff's reply to the PI

18   motion, or what's your view on that?

19           MS. DENNIS:  Yes, your Honor.

20           We were considering -- we haven't had a chance to

21   discuss this with defendants yet -- simultaneous prehearing

22   finding of fact and conclusions of law exchange.  We saw your

23   Honor's individual practices for bench proceedings that you

24   prefer those.  We were thinking 50 pages per side due the same

25   day, and then we would have posthearing findings of fact and

1    conclusions of law, simultaneous exchange again, seven days

2    after the conclusion of the PI hearing, a hundred pages per

3    side.  I have not mentioned that.

4            THE COURT:  That's fair.

5            MS. DENNIS:  We do not think there should be replies

6    to those if we have prehearing findings of fact and conclusions

7    of law.

8            THE COURT:  I agree.

9            The prehearing findings of fact, in your view could

10   those be filed at the same time as plaintiff's reply to

11   defendant's opposition to the preliminary injunction motion?

12           MS. DENNIS:  Yes, your Honor.

13           THE COURT:  Okay.

14           Mr. Pfeiffer, what is your view on that.

15           MR. PFEIFFER:  I think we are not far off, your Honor.

16   We would actually like to see their reply brief on their

17   preliminary injunction before we do our proposed findings

18   pretrial.  Even if there is a gap in there of three days, I

19   think that would get us there.

20           THE COURT:  Give me a moment.  Thank you.

21           Mr. Moses, I presume you agree?

22           MR. MOSES:  Yes.

23           THE COURT:  Thank you.  My goal is to get you a

24   preliminary injunction hearing date today so we can all work

25   backwards from that and know what to expect.

O4TNTAPC

```
 1              I am just looking.  One moment.

 2              If I had prehearing findings of fact and conclusions

 3   of law coming in on the 30th, that gives you three days with

 4   it, Mr. Pfeiffer.

 5              Would that work?

 6              MR. PFEIFFER:  Yes, your Honor.  That is exactly what

 7   I was hoping.

 8              THE COURT:  It is not long.

 9              MR. PFEIFFER:  It is a Friday?

10              THE COURT:  It is.

11              Mr. Moses?

12              MR. MOSES:  Yes, your Honor.

13              THE COURT:  I am now looking at the appropriate

14   hearing date.  I would like to have some time with those

15   documents before moving straight into hearing.  I think it

16   would be a more productive hearing.  I would be able to hear

17   the evidence better if I had all that information before me.

18              The way I calculate it is it's going to be about seven

19   and a half days, because I do about five and a half hour days

20   with a nonjury proceeding.  So it's about a week and a half.

21              Is it too late, Ms. Dennis, if we hold the hearing on

22   the 16th of September instead of the 2nd?

23              MS. DENNIS:  I believe, your Honor, that bumps up

24   against the Part 3 proceedings.  I would just agree with

25   Mr. Moses that the federal court's proceedings take precedence.
```

O4TNTAPC

```
 1                THE COURT:  So you will be doing --

 2                MS. DENNIS:  They will be September 25.  They will

 3      start.  The parties can move the date.  We are not inclined to

 4      do so.

 5                I also disagree that there is precedent that says this

 6      Court can stay that, but we think that we can avoid this

 7      conflict by having -- we would be amenable to September 10 if

 8      that gives your Honor enough time with the prehearing

 9      submissions.

10                THE COURT:  Understood.  Thank you.

11                Let's do that to make sure we can handle it all at the

12      same time.

13                MS. DENNIS:  Excuse me, your Honor.  I believe

14      September 9 is the Monday.

15                THE COURT:  Right.  Okay.  Why don't we start on

16      September 9.

17                Mr. Pfeiffer has something to add?

18                MR. PFEIFFER:  Actually, I will let Mr. Moses.

19                THE COURT:  Mr. Moses has something to add.

20                MR. MOSES:  Your Honor, we want to do what is most

21      convenient for the Court.  I don't think that if we are in

22      trial at the end of the day we are going to have dual

23      proceedings in that Part 3 proceeding.

24                So I put it out there.  The truth is the average time

25      for these cases between filing and the actual PI proceeding,
```

O4TNTAPC

1    you know, you will struggle to find only but a handful that are

2    fewer than five months.

3              THE COURT:  I looked.

4              MR. MOSES:  So September 16 would I think literally be

5    five months.  We are trying to do this quickly, but if your

6    Honor thinks September 16 is good for you, then I think we can

7    make that happen.

8              THE COURT:  Thank you.  I appreciate that.

9              Mr. Pfeiffer?

10              MR. PFEIFFER:  Yes, your Honor.  The only thing I was

11    going to say is we want to make sure the Court has adequate

12    time to do what it needs to get ready for an efficient and full

13    and fair trial.  So we'll defer to you on that.

14              THE COURT:  Thank you.  I appreciate it.  I think I

15    work in the 9th then.  I can start on the 9th and we will go

16    that week and into the next week should we need it.  I think we

17    likely will.  So we will start on September 9.

18              And I agree with having the posthearing findings of

19    fact and conclusions of law seven days after the hearing.

20    Hopefully you can do those as we are going along and be

21    revising the prehearing submissions so that it's not a whole

22    new endeavor for you, but they will be updated with the

23    information that was relayed during the hearing and be more

24    helpful to the Court in that way.

25              I think the 50 pages and a hundred pages are fair.

1          We will start September 9.

2          All right.  The other days that I have here work for

3    me.  Given this very compressed schedule, I'm sure everyone

4    understands that these deadlines are going to be important to

5    adhere to.  I don't think that there's a lot of slack for

6    moving things around.

7          I am heartened by the fact that the parties are

8    talking about a proposed case management plan, and I would

9    encourage you to make that as detailed as possible so that

10   there are no misunderstandings about what should be done when

11   and when things are due just so that we can work toward this

12   date that I will keep on the calendar that you can then rely

13   upon.

14         Ms. Dennis, do you have any objection to the subpoenas

15   starting now that we can get the third-party discovery moving?

16         MS. DENNIS:  Yes and no, your Honor.  I don't think

17   the FTC has a problem with discovery commencing right now.  I

18   do think there need to be caps on this.  It can be very abusive

19   to third parties.

20         The data on which the FTC relies is the data that the

21   defendants rely on in the ordinary course.  We are not entirely

22   sure there is this need for all this third-party discovery, but

23   would like time to talk with the defendants about it and raise

24   any disputes with your Honor by Friday and get this case

25   moving.

O4TNTAPC

1          THE COURT:  So your proposal is Friday will be your

2    overall schedule.  I saw Friday by 5:00 p.m.

3          MS. DENNIS:  Yes, your Honor.

4          THE COURT:  And you can let me know if there's any

5    issue how much third-party discovery, when you will start,

6    etc.?

7          You will have hashed all that out by then?

8          MS. DENNIS:  Yes, your Honor.

9          THE COURT:  That is only a few days from now.  Thank

10   you.

11         Mr. Pfeiffer, will that work for you to work it all

12   out and then tell me if there's any issue by Friday?

13         MR. PFEIFFER:  Your Honor, I guess so long as we are

14   actually able to launch on Friday, then yes.  We were concerned

15   that the way it was currently structured we would be submitting

16   a proposal on Friday and then waiting for a clearance to go

17   after that.

18         THE COURT:  No.

19         MR. PFEIFFER:  We don't want this week to be lost,

20   given the discovery cutoff that already looms.

21         THE COURT:  No.  I want no time to be lost, which is

22   why I brought you in so quickly today.

23         MR. PFEIFFER:  We appreciate that.

24         THE COURT:  No.

25         I am even curious why you need an entire week to work

O4TNTAPC

```
 1  through this, but if that's what you would like --
 2          MR. PFEIFFER:  Not what I would like, your Honor.  I
 3  would love to have it resolved before Friday.
 4          THE COURT:  Is there a way to resolve the schedule
 5  earlier than Friday, Ms. Dennis?
 6          MR. PFEIFFER:  We proposed a time to meet and confer
 7  with them tomorrow at 1:30.  I am not sure we have heard back
 8  yet, but we are willing to move this along.
 9          What I can say is if we don't reach an agreement on
10  any sort of cap on third-party discovery by Friday what we can
11  agree to do is, whatever cap we have at least proposed, the
12  FTC, the defendants can move forward within the construct of
13  that cap and then your Honor can decide any dispute.
14          THE COURT:  I don't want anything delayed.  I
15  appreciate, though, that the parties are going to discuss it.
16  It is always more fruitful for the parties to reach consensus
17  on what is the best approach here, because you are going to
18  know the case better and you are going to be able to work
19  through it.
20          What I would suggest then is you send me in a case
21  management plan, let's try by Thursday if we can then instead
22  of Friday.
23          And Mr. Pfeiffer has something to say.
24          MR. PFEIFFER:  I was going to ask for Wednesday, your
25  Honor.  I may have been in a cab at the time, but we will
```

1    certainly meet and confer tomorrow with them at 10:30, or 1:30.

2         THE COURT:  If you want to get it to me early, that is

3    great.  If you want to get me something on Wednesday, that's

4    wonderful.

5         Ms. Dennis, can we try for Wednesday?

6         MS. DENNIS:  Your Honor, the FTC certainly is willing

7    to work towards that.  It is just normally when we send edits

8    back -- I am not trying to say that the defendants take too

9    long, but they obviously have two clients they have to talk

10   with, so there is a little bit of a lag.  So we will certainly

11   confer in good faith tomorrow -- I believe the time was 1:30 --

12   and work towards trying to get to a resolution as soon as

13   possible.

14        THE COURT:  Okay.

15        MR. PFEIFFER:  I said 10:30 because I am on California

16   time.

17        Your Honor, maybe I can separate two issues.

18        THE COURT:  Yes.

19        MR. PFEIFFER:  There are other discovery issues that

20   the parties are still working out that would be part of the

21   CMO.  The subpoenas, however, are a separate issue, and there

22   is no limit in the federal rules for the number of third-party

23   subpoenas.  We do not believe there should be --

24        THE COURT:  I am aware.

25        MR. PFEIFFER:  -- an artificial limit here.

O4TNTAPC

```
1          We can either get to an agreement or disagreement
2    about that I would think tomorrow.
3          THE COURT:  Okay.  Why don't we have you send in a
4    case management plan by 5:00 p.m. on Wednesday, May 1.  In that
5    you will also include, if there is a joint letter that
6    highlights any discovery obstacle that you have, be it a cap on
7    third-party subpoenas or whatever it is, you'll let me know
8    right away can I get it resolved and we can go from there.
9          That's generally how I will handle discovery disputes
10   in this case.  As you will see in my individual rules, I
11   require a joint letter -- not a joint letter.  I require a
12   letter from one party and then a response from the other.  It's
13   generally three pages.
14         In a case like this if you end up needing more pages,
15   you will tell me.  But if you stick to that, you can usually
16   say what you need to say, because you can attach an exhibit.
17         So with respect to the issue of the third-party
18   subpoenas, I don't want you to have to wait for one letter and
19   then another letter three days later.  So if there is an
20   ability to put a joint letter together on Wednesday that even
21   separates it -- this is the FTC's position, this is defendants'
22   position, and then it has it all laid out for me -- I can use
23   that as opposed to waiting for a back and forth in letters.
24         MR. PFEIFFER:  Thank you, your Honor.
25         MS. DENNIS:  We are amenable to that, your Honor.
```

O4TNTAPC

1              Thank you.

2              THE COURT:  Okay.  Good.  That's great.  Thank you.

3              That is the case generally for discovery disputes.  If

4    you find that it's more expeditious to tee this up for me in a

5    joint letter as opposed to one letter and then three days later

6    another letter, you can feel free to do that.  If you have the

7    discussions and you can exchange the information and put it in

8    a joint letter and send it in.

9              Or you can expedite the three-day period, you know,

10   you all agree we are going do it in a day and a day so you can

11   get to me more quickly, that is fine too, but you will see the

12   default rules in my individual rules.

13             So we will have a case management plan.

14             We've got a date for the PI hearing.

15             And Mr. Mr. Pfeiffer and Mr. Moses, you will be

16   talking with Ms. Dennis and her colleagues about whether you

17   have a need for a motion for a more definite statement or

18   whether you can work that out.

19             Is that right?

20             MR. PFEIFFER:  Yes, your Honor.

21             THE COURT:  Okay.  Good.

22             I think that's everything that I wanted to handle on

23   my side.

24             Ms. Dennis, is there anything else that we should talk

25   about here today?

O4TNTAPC

```
 1              MS. DENNIS:  No, your Honor, from the FTC.

 2              THE COURT:  Okay.  Thank you.

 3              And Mr. Pfeiffer?

 4              MR. PFEIFFER:  No, your Honor.

 5              THE COURT:  Mr. Moses?

 6              MR. MOSES:  Nothing for us, your Honor.

 7              THE COURT:  Okay.

 8              In terms of resolving disputes, I want to get a sense

 9    a little bit because I am going to want to keep the case moving

10    very quickly.  If a discovery dispute comes up, I usually

11    handle things in person, but I presume people are far away, so

12    maybe it's better to do videoconferences for any discovery

13    disputes.

14              Let me hear where people are.

15              Ms. Dennis, what is your preference, and where are

16    you?

17              MS. DENNIS:  We would prefer video, your Honor.  We're

18    certainly glad to come up here.  We are in Washington, D.C.,

19    but we think that might be more efficient and better for

20    taxpayer money as well.

21              THE COURT:  That's always a consideration.

22              Mr. Pfeiffer?

23              MR. PFEIFFER:  Your Honor, as I alluded to, I actually

24    live in California.

25              THE COURT:  Okay.
```

1            MR. PFEIFFER:  I will be here whenever you want me to

2     be here, but when it is suitable for you to do it by video,

3     that's better for me.

4            THE COURT:  Mr. Moses.

5            MR. MOSES:  I am just on the 4 train, your Honor.  But

6     we will obviously do what is most convenient for all the

7     parties.

8            THE COURT:  We will do whatever we need to do to keep

9     things moving.  When it's necessary and when it would be

10    helpful, I will call the parties in.  Otherwise, I will try to

11    do things as conveniently for you.  Rest assured there will be

12    listen-only lines for everyone to come in here, so don't worry

13    about that, all of you sitting back there.  But hopefully that

14    will result in our being able to move things more quickly.

15           Okay.  I think that's everything that we need.

16           Should anything change, please let me know, but

17    otherwise I expect to get a case management plan from you on

18    Wednesday.

19           Now let me say one thing.  My case management plan

20    that I have in my individual rules and on my website I think

21    you are going to need much more than that.  I think you are

22    going to need more internal deadlines about precisely when

23    things are going to be served, responded to, etc., similar to

24    what I have seen in some other cases.  I think it would behoove

25    you all to do that as opposed to using my form.

O4TNTAPC

1          So please come up with a case management plan that

2     captures that information in the best way that we can keep this

3     case on track.  It will have probably some dates for

4     interrogatories, all those things will be built into it I think

5     with more specificity than I generally have in my cases.

6          I think what we should all agree upon is that those

7     dates are real dates, and if they move slightly, you'll

8     determine, but we are not going to treat it like I do in my

9     other case management plans, which is as long as you get fact

10    discovery in at the end of fact discovery I don't really care

11    what you do and the other things before that.  I don't think we

12    have the luxury of doing that in this case because we need to

13    keep things on schedule.

14          So please be as specific as possible when you send

15    that in.  You will send in any issues on Wednesday that need my

16    resolution, and I will then read everything that comes my way.

17          All right.  If there's nothing further, then thank you

18    all for being here this afternoon.

19          Court is adjourned.

20          (Adjourned)

21

22

23

24

25