# EXHIBIT 3

# REQUEST FOR ADDITIONAL INFORMATION
# AND DOCUMENTARY MATERIAL
# ISSUED TO CAPRI HOLDINGS LIMITED
# FTC File No. 231-0133

Unless modified by agreement with the staff of the Federal Trade Commission, each Specification of this Request for Additional Information and Documentary Material (the "Request") requires a complete search of "the Company" as defined in Definition D1 of the Definitions, which appear after the following Specifications. If the Company believes that the required search or any other part of the Request can be narrowed in any way that is consistent with the Commission's need for documents and information, you are encouraged to discuss any questions and possible modifications with the Commission representatives identified in Instruction I(12) of this Request. All modifications to this Request must be agreed to in writing by a Commission representative. Submit the information requested in Specifications 1 and 21(a) of this Request promptly to facilitate discussions about any potential modifications to this Request including the scope of the Company's search or interrogatory response obligations.

## **SPECIFICATIONS**

1. Submit:

    (a) one copy of each organization chart and personnel directory in effect since January 1, 2021 for the Company as a whole and for each of the Company's Facilities or divisions involved in any activity relating to any Relevant Product;

    (b) a list of all agents and representatives of the Company, including, but not limited to, all attorneys, consultants, investment bankers, product distributors, sales agents, and other Persons retained by the Company in any capacity relating to the Proposed Transaction or any Relevant Product provided in any Relevant Area (excluding those retained solely in connection with environmental, tax, human resources, pensions, benefits, ERISA, or OSHA issues);

    (c) for each Person identified in response to Specification 1(b), the agent's or representative's title, business address, and telephone number, as well as a description of that Person's responsibilities in any capacity relating to the Proposed Transaction or any Relevant Product provided in any Relevant Area; and

    (d) a Data Map for the Company.

2. List each Relevant Product manufactured or sold by the Company in any Relevant Area, and for each:

    (a) provide a detailed description of the product;

# **DEFINITIONS**

For the purposes of this Request, the following Definitions apply:

D 1.  The term "the Company" or "Capri" means Capri Holdings Limited; its domestic and foreign parents, predecessors, successors, divisions, subsidiaries, affiliates, partnerships and joint ventures; and all directors, officers, employees, agents, and representatives of the foregoing. The terms "subsidiary," "affiliate," and "joint venture" refer to any Person in which there is partial (25% or more) or total ownership or control between the Company and any other Person.

D 2.  The term "Company Brand" means Versace, Jimmy Choo, and Michael Kors.

D 3.  The term "Company Collection" means Michael Kors Collection, Michael by Michael Kors, Michael Kors Mens, and Michael Kors Outlet; Jimmy Choo (non-outlet) and Jimmy Choo Outlet; Versace (non-outlet), Atelier Versace (non-outlet), Versace Jeans Couture (non-outlet), and Versace Outlet.

D 4.  The term "Tapestry" means Tapestry, Inc.; its domestic and foreign parents, predecessors, successors, divisions, subsidiaries, affiliates, partnerships, and joint ventures; and all directors, officers, employees, agents, and representatives of the foregoing. The terms "subsidiary," "affiliate," and "joint venture" refer to any Person in which there is partial (25% or more) or total ownership or control between Capri and any other Person. Tapestry includes the brands Coach, Kate Spade and Stuart Weitzman; and the collections: Coach (non-outlet) and Coach Outlet; Kate Spade (non-outlet) and Kate Spade Surprise (inclusive of Kate Spade Outlet); and Stuart Weitzman (non-outlet) and Stuart Weitzman Outlet.

D 5.  The term "Proposed Transaction" means the proposed acquisition of Capri by Tapestry pursuant to the Merger Agreement dated August 10, 2023, or any other proposed, contemplated, discussed, or related transaction between Tapestry and Capri.

D 6.  The term "Customer" means the direct purchaser of any Relevant Product, whether a Wholesale Customer (e.g., department store) or consumer.

D 7.  The term "Data Map" means an organized list, schematic, diagram, or other representation sufficient to show where and how the Company stores all physical and electronic information in its possession, custody, or control, including, but not limited to, information systems (e.g., email messages, voice-mail messages, communications logs, enterprise content management, instant messaging, database applications), locations where information is stored, including servers and backup systems (e.g., physical Company Facility, third-party vendor location, cloud), and the physical and logical network topology of the Company's computer systems.

D 8.  The term "Data Set" means all or a subset of data held by, or accessible to, the Company in the normal course of business provided by the Company to respond to any Specification in this Request.

21

D 9.  The term "documents" means any information, on paper or in electronic format, including written, recorded, and graphic materials of every kind, in the possession, custody, or control of the Company. The term "documents" includes, without limitation: electronic files, including those created, shared, edited, or exchanged through collaboration or document management platforms such as, but not limited to, Microsoft 365, Google Workspace, and Quip; email messages; audio files; any communications created, shared or exchanged through messaging applications or other communication systems, including ephemeral and non-ephemeral messaging applications such as, but not limited to, Slack, Confide, Signal, WhatsApp, Wickr, iMessage, Telegram, Microsoft Teams, or Google Hangouts Chat; instant messages; drafts of documents; metadata and other bibliographic or historical data describing or relating to documents created, revised, or distributed electronically; copies of documents that are not identical duplicates of the originals in that Person's files; and copies of documents the originals of which are not in the possession, custody, or control of the Company. Employee-owned personal electronic devices used to store or transmit documents responsive to this Request are considered in the possession, custody, or control of the Company.

    (a)    Unless otherwise specified, the term "documents" excludes:

          (i)    bills of lading, invoices, purchase orders, customs declarations, and other similar documents of a purely transactional nature;

          (ii)    architectural plans and engineering blueprints;

          (iii)    documents solely relating to environmental, tax, OSHA, or ERISA issues; and

          (iv)    relational and enterprise databases, except as required to comply with an individual Specification.

    (b)    The term "computer files" includes information stored in, or accessible through, computer or other information retrieval systems. Thus, the Company should produce documents that exist in machine-readable form, including documents stored in personal computers, portable computers, workstations, minicomputers, mobile devices, mainframes, servers, backup disks and tapes, archive disks and tapes, and other forms of offline storage, whether on or off Company premises. If the Company believes that the required search of backup disks and tapes and archive disks and tapes can be narrowed in any way that is consistent with the Commission's need for documents and information, you are encouraged to discuss a possible modification to this Definition with the Commission representatives identified on the last page of this Request. The Commission representative will consider modifying this Definition to:

          (i)    exclude the search and production of files from backup disks and tapes and archive disks and tapes unless it appears that files are missing from

        files that exist in personal computers, portable computers, workstations, minicomputers, mainframes, and servers searched by the Company;

    (ii)    limit the portion of backup disks and tapes and archive disks and tapes that needs to be searched and produced to certain key individuals, or certain time periods or certain Specifications identified by Commission representatives; or

    (iii)    include other proposals consistent with Commission policy and the facts of the case.

D 10.    The term "Facility" refers to any store, distribution center, fulfillment center, manufacturing plants, outlet, or any building related to a Relevant Product.

D 11.    The term "Handbags" means women's and men's bags and cases used for common everyday purposes, such as handbags, backpacks, duffel bags, cross-body bags, business bags, and other small bags.

D 12.    The term "Minimum Viable Scale" means the smallest amount of production at which average costs equal the price currently charged for each Relevant Product. It should be noted that Minimum Viable Scale differs from the concept of minimum efficient scale, which is the smallest scale at which average costs are minimized.

D 13.    The term "modern attachment" means links or pointers in documents to files in cloud or network locations maintained by or on behalf of the Company.

D 14.    The term "Out Of Home Advertising" means is advertising experienced outside of the consumer's home.

D 15.    The term "Person" includes the Company and means any natural person, corporate entity, partnership, association, joint venture, government entity, or trust.

D 16.    The term "Plans" means tentative and preliminary proposals, recommendations, or considerations, whether or not finalized or authorized, as well as those that have been adopted.

D 17.    The term "relating to" means in whole or in part constituting, containing, concerning, discussing, describing, analyzing, identifying, attaching, or stating.

D 18.    The terms "and" and "or" have both conjunctive and disjunctive meanings.

D 19.    The term "Relevant Product" as used herein means, and information shall be provided separately for 1) the Company, 2) by Company Brand, and 3) by Company Collection, for each of the following:

  (a) Women's Handbags;
  (b) Men's Handbags;
  (c) Women's Small Leather Goods; and
  (d) Men's Small Leather Goods.

D 20. The term "Relevant Area" means, and information shall be provided separately for, (a) the United States, (b) North America, and (c) worldwide.

D 21. The term "Sales" means net sales (i.e., total sales after deducting discounts, returns, allowances and excise taxes). "Sales" includes Sales of each Relevant Product whether manufactured by the Company itself or purchased from sources outside the Company and resold by the Company in the same manufactured form as purchased.

D 22. The term "Small Leather Goods" means products primarily used to carry notes and coins, business cards, payment cards, and smaller items for traveling such as passport cases and cosmetic/toiletry bags.

D 23. The term "Sunk Costs" means the acquisition costs of tangible and intangible assets necessary to manufacture and sell each Relevant Product that cannot be recovered through the redeployment of these assets for other uses.

D 24. The term "Technology Assisted Review" means any process that utilizes a computer algorithm to limit the number of potentially responsive documents subject to a manual review. A keyword search of documents with no further automated processing is not a Technology Assisted Review.

D 25. The term "Wholesale Customer" means any Customer that buys any Relevant Product from the Company for resale and includes, but is not limited to, department stores and third-party distributors.