**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| FEDERAL TRADE COMMISSION, <br><br>       Plaintiff, <br><br>   v. <br><br> TAPESTRY, INC., <br><br>   and <br><br> CAPRI HOLDINGS LIMITED, <br><br>       Defendants. | 1:24-cv-03109-JLR |

## DEFENDANT TAPESTRY, INC.'S ANSWER AND DEFENSES

    Defendant Tapestry, Inc. ("Tapestry") responds as follows to the allegations set forth in Plaintiff Federal Trade Commission's ("Plaintiff" or "FTC") April 22, 2024 Complaint.

## PRELIMINARY STATEMENT

    The FTC's attempt to block Tapestry's revitalization of Michael Kors, a once great American fashion brand, makes no sense. It is based on an unrealistic view of the marketplace as consisting only of vulnerable, choice-constrained consumers that care deeply about fashion, but are unwilling to pay for it, and who are highly sensitive to price, but refuse to consider hundreds of bags available at every price point in competition with Tapestry and Capri. The FTC mistakenly believes there are only three options for a consumer seeking a high-quality handbag in whatever price range the FTC ultimately settles on for its untenable "accessible luxury" handbag market: Tapestry's Coach and Kate Spade, and Capri's Michael Kors. Indeed, the FTC's Complaint incredibly goes so far as to decry that these three brands constitute a "duopoly" in that market.

Compl. ¶¶ 2, 71.  Even a quick department-store visit, online search, skim of a fashion magazine, scroll on social media, browse of a fashion resale website, stroll through a mall, or scan of restaurant patrons shatters the image of such a narrow and artificial market.  *Well over one hundred fifty handbag brands, across prices and bag types, compete in the United States today with Tapestry and Capri.*[1]  New brands and dynamic competitors are leveraging the COVID-accelerated shift to online sales, marketing, and product placement to rapidly build brand value, tap into consumer sentiment, and aggressively win sales.  Meanwhile, longstanding brands like Burberry, Cole Haan, Gucci, Longchamp, Louis Vuitton, Marc Jacobs, Ralph Lauren, Tory Burch, Tumi,

---

[1]      This reference to more than one hundred fifty brands is no exaggeration.  It is conservative, as there are at least that many brands offering leather handbags on popular department store websites or other websites today and even more offering handbags of other materials.  That very conservative list includes at least the following brands, each of which market numerous handbags, in alphabetical order:  3.1 Phillip Lim, A.P.C., Acne Studios, Aerin, Aimee Kestenberg, Akris, Alexander McQueen, Alexander Wang, Alexis Bittar, AllSaints, Altuzarra, Anima Iris, Anine Bing, Anne Klein, Anya Hindmarch, Aqua, ASHYA, ATP Atelier, Aupen, Balenciaga, Balmain, Béis, Bembien, Bendetta Bruzziches, BOSS, Botkier, Bottega Veneta, Brahmin, Brandon Blackwood, BTB Los Angeles, Burberry, By Far, Callista, Calvin Klein, Chloé, Christian Louboutin, Clare V., Cole Haan, Comme des Garçons, Coperni, COS, Cult Gaia, Cuyana, Daana Saakena, Dagne Dover, DeMellier, DIESEL, Dior, DKNY, Dolce & Gabbana, Donna Karan, Dooney & Bourke, Dragon Diffusion, Dries Van Noten, Elleme, Emporio Armani, Everlane, Fendi, Ferragamo, Filson, Frame, Frances Valentine, Frankie Shop, Free People, Freja New York, Frye, Gabriela Hearst, Ganni, Gerard Darel, GiGi New York, Givenchy, Golden Goose, Gucci, Guess, Hammitt, Hereu, Hermès, Herschel, Hobbs London, HOBO, Isabel Marant, Jacquemus, Jil Sander, JW Anderson, JW Pei, Khaite, Ksubi, Kurt Geiger London, L'alingi, Larroude, Lele Sadoughi, Le Tanneur, Liselle Kiss, Little Liffner, Loeffler Randall, Longchamp, Louis Vuitton, Luar, Lusso, Madewell, Maison Margiela, Maje, Mango, Mansur Gavriel, Marc Jacobs, Marine Serre, Marni, MCM, Moncler, Montblanc, Moschino, Mulberry, MZ Wallace, NEOUS, Nine West, Off-White, Oroton, Oryany, Parker Clay, Petit Kouraj, Pinko, Polène, Polo Ralph Lauren, Prada, Proenza Schouler, Puppets & Puppets, Rabanne, Rag & Bone, Rebecca Minkoff, Ree Projects, Reformation, Reiss, Roberto Cavalli, ROYCE New York, Sacai, Saint Laurent, Samsonite, Sandro, Savette, SC103, Senreve, Sézane, Shinola, Silver & Riley, Simkhai, Simone Rocha, Sophia Webster, St. Agni, Stand Studio, Staud, Stella McCartney, Steve Madden, Strathberry, Ted Baker, Teddy Blake, Telfar, Theory, The Kooples, Timbuk2, Tom Ford, Tory Burch, TOTEME, Tumi, Ugg, Valentino, Valentino Garavani, Victoria Beckham, Vidakush, Vince, Vince Camuto, Wandler, We-AR4, Weekend Max Mara, Whistles, Yuzefi, Yvonne Koné, Zadig & Voltaire, and Zara.

and others continue to compete aggressively to stay relevant in this evolving industry. Michael Kors' struggles over the last several years demonstrate this challenge: as other brands have entered or stayed fresh and relevant amongst robust competition, its star has fallen. Against this backdrop, Tapestry seeks to acquire Capri so that it can achieve its procompetitive goal of reinvigorating consumer perception of Michael Kors to increase demand, expand sales, and deliver Michael Kors (and Capri's other brands) to more consumers.

The FTC's unintelligible market definition and theory of consumer harm make no sense in this industry. The FTC's worldview cannot explain why consumers spend hundreds or more to buy a frog-shaped crossbody bag, a bright pink puffed satchel, or a top-handle bag that looks like a pizza box (all handbags that Kate Spade offers), let alone why they pay more than $1,000 for a leather pouch mimicking a household trash bag (offered by what the FTC calls a "true luxury" brand). A handbag purchase is far more emotional, multifaceted, and discretionary than the FTC's theory can tolerate. For some, handbags are an extension of their self-expression. For others, they are purely functional, holding little or no sentimental value. Some shoppers have twenty handbags and seek out the most on-trend designs each season by obsessively tracking influencers and new styles. Others may use a single black leather tote as a wardrobe staple for years. An individual with a higher income may care little about designer bags or fashion at all, while other consumers might save and ultimately stretch to buy a bag of their dreams to celebrate a personal milestone or as a gift after searching widely. There is no definable captive consumer of fashionable handbags who cannot readily switch from brand to brand, across price ranges. The FTC's worldview comes from its experience litigating business tie-ups involving critical healthcare infrastructure, essential

manufacturing inputs, or ubiquitous digital platforms, but those industries are far from this world of fashion.[2]

A proper investigation into the commercial realities of this industry would have led to the unavoidable conclusion that this transaction cannot harm consumers, or anyone else. Antitrust enforcers in Europe, China, Japan, Korea, and elsewhere reviewed this merger, but did not find cause to stop it. The European Commission, for example, conducted a market investigation of competitors and customers over many months and concluded that the handbag industry is "constantly evolving and characterized by low barriers to entry and frequent entry of new players." The European Commission also explained that "the relevance of Michael Kors is declining," that even "relatively small" competitors can constrain prices of larger companies, and that "independent brands and new entrants would be able to compete effectively with the [Defendants] post-merger." The FTC fails to address the market realities in any detail in its Complaint, and does not appear to have inquired into them through any rigorous investigation. Despite having over seven months to evaluate this transaction, the FTC failed to obtain written or oral testimony from any handbag consumer, manufacturer, or competitor of Tapestry or Capri. It issued some demands for documents to companies, but then did not meaningfully follow-through on its own requests. Some companies produced a few documents each, and the FTC did not bother to pursue more. The scope of its subpoenas hardly evidences any attempt to learn about new entrants.

---

[2]     Even in its familiar territory, the FTC has suffered a string of recent loses in merger challenges litigated to completion in federal court. *See, e.g.*, *FTC v. Meta Platforms Inc.*, 654 F. Supp. 3d 892 (N.D. Cal. Feb. 3, 2023) (FTC losing motion for preliminary injunction involving social media network); *FTC v. Thomas Jefferson Univ. Hosp.*, 505 F. Supp. 3d 522 (E.D. Pa. 2020) (FTC losing motion for preliminary injunction involving hospital merger); *FTC v. RAG-Stiftung*, 436 F. Supp. 3d 278 (D.D.C. 2020) (FTC losing motion for preliminary injunction involving chemical used for the manufacturing of semiconductors).

The FTC's inadequate investigation has contributed to its unrealistic view of the handbag industry, and caused it to falter at the gating element of its claim—defining the relevant product market.  A "proper market definition [] can be determined only after a factual inquiry into the commercial realities faced by consumers," *United States v. Am. Express Co.*, 838 F.3d 179, 197 (2d Cir. 2016), *aff'd*, *Ohio v. Am. Express Co.*, 585 U.S. 529 (2018) (internal quotations omitted), which the FTC did not meaningfully engage in.  Instead of using its investigatory-subpoena power to identify "products that have reasonable interchangeability from the perspective of the relevant consumer with the product sold by the defendant firm," *In re Am. Express Anti-Steering Rules Antirust Litig.*, 361 F. Supp. 3d 324, 335 (E.D.N.Y. 2019) (internal quotations omitted), the FTC merely identified one of the many categories of products that Defendants sell, saw some similarities and documents showing that the Defendants unremarkably pay attention to one another (along with dozens of other handbag designers), and stopped looking for reasonable substitutes. Its effort to capture headlines by claiming that mergers between companies that are "close competitors" are presumptively illegal wrongly tracks the mistake that many plaintiffs make when trying to plead a relevant antitrust market consisting of only the defendant's brand.  That type of market definition is improper because it "fails to include all products reasonably interchangeable by consumers for the same purposes," which is exactly what the FTC ignores in its pleading. *Skyline Travel, Inc. v. Emirates*, 476 F. App'x 480, 481 (2d Cir. 2012); *In re Am. Express Anti-Steering Rules*, 361 F. Supp. 3d at 343 ("It is an understatement to say that single-brand markets are disfavored.").

The FTC compounded its error by failing to articulate how the subjective marketing term "accessible luxury" could possibly describe a "distinct" product market for antitrust purposes.  The handbag industry is awash with descriptive verbiage, including "semi luxury," "trendy luxury,"

"contemporary," "classics," "lux," "supreme luxury," "timeless luxury," "premium," "premier," and many more, but there is no agreement on what any of those categories mean. The FTC vaguely tries to draw lines separating "mass market," "accessible luxury," and "true luxury" handbags, but the so-called "distinct" features it identifies for each group transcend all three and provide no real insight into what the FTC alleges is in, or out, of the alleged "accessible luxury" handbag market. For example:

- The Complaint contends that accessible luxury handbags have "distinct prices," but never articulates what those prices are. Compl. ¶ 33. Is a $90 handbag included? Does a $1,500 handbag fit? What about a $3,000 handbag sold secondhand for $1,000? What about a $150 handbag that is 40% off? Is it in the market when it goes on sale? The Complaint is unclear.

- The Complaint suggests that bags made of "manmade materials" are inferior to "accessible luxury" bags, Compl. ¶ 39, but it overlooks that Chanel, Hermès, Louis Vuitton, Gucci, Fendi, and Valentino (all "true luxury" brands according to the FTC) offer nylon handbags, as do Tapestry and Capri, in addition to bags made of canvas, tweed, straw, denim, and even astroturf. Is a Prada faux leather bag in the FTC's market then? What about vegan leather products at higher price points? Again, the Complaint is unclear.[3]

- The Complaint contends there are "distinct customers" for accessible luxury bags because a certain percentage of buyers fall below a specific income level, even though large percentages of that same income group buy "true luxury" bags as well, as the Complaint concedes. Compl. ¶ 36. Likewise, the Complaint suggests Capri estimated in 2023 that over 60 percent of the consumers of the FTC-designated "true luxury" brands Gucci, Dior, Fendi, and Valentino had household income in excess of $100,000, Compl. ¶ 37; but then what about those that make less but still choose to buy these more expensive brands? Are those sales in or out of the FTC's market? Once again, the Complaint is silent.

---

[3]   At a May 13, 2024 hearing, counsel for the FTC represented that the FTC would answer, even before any deadline for contention interrogatories, an interrogatory requiring the FTC to "identify each person you have included as a competitor of Coach, Michael Kors, and Kate Spade in the relevant antitrust market in your complaint." May 13, 2024 Hrg. Tr. 21:3-14. Defendants served just such an interrogatory on the FTC on May 14, 2024, and eagerly await the FTC's response. *See also id.* at 27:11-17 (counsel for FTC representing that "if they propound interrogatory like most defendants do asking for the information, certainly with the list of competitors, we'd provide that").

As these examples show, the list of features that the FTC contends are "distinct" to accessible luxury products actually transcend handbags of all types, classes, and brands.  It is impossible to know from the Complaint's allegations even whether all Coach, Kate Spade, and Michael Kors handbags fit into the FTC's definition of "accessible luxury."  Are materials the determinant or is price?  Or is it the location of manufacturing?  Perhaps it is all three, but in what measure?  Or is it the brand alone that determines what product is in the FTC's market?  Or is this a case of the FTC "knows it when it sees it"?  The Complaint is again unclear.  "Determination of the relevant market is a necessary predicate to a finding of a violation of the Clayton Act," *United States v. E.I. du Pont de Nemours & Co.*, 353 U.S. 586, 593 (1957), but the FTC fails to articulate a viable market, and will not be able to cure that failure at an evidentiary hearing or trial.

Even more fundamentally, the FTC appears to have confused itself as to what it considers to be a "handbag" for purposes of its relevant market allegations.  Although the Complaint provides no definition, counsel for the FTC represented at the May 13, 2024 hearing that "handbag," as the FTC uses that term here, means "[a] bag held in the hand or hung from a shoulder strap and used for carrying small personal articles and money."  May 13, 2024 Hrg. Tr. at 23:17-20.  That definition would seem to capture a duffle bag, among many other products, but the FTC has now said that a "duffle bag would not" be a "handbag."  *Id.* at 25:9-10.  And the FTC has expressed uncertainty about whether men's handbags fit within its definition, *id.* at 25:14-17, but then later confirmed by email that "men's and women's handbags are part of the alleged relevant product market," at least for now.[4]  The Complaint, however, is silent about any demand substitutability

---

[4]      Counsel for the FTC's May 16, 2024 email contained a reservation that this "preliminary market analysis" is "subject to further analysis through fact and expert discovery."

between men's and women's bags, or the myriad other bags that might fall within the definition of a "handbag," such as a backpack, briefcase, or laptop bag.

The FTC's case fails for the additional independent reason that, in any properly defined market, the combined share of Tapestry's and Capri's handbag brands is not large enough to show any likelihood of harm to consumers, much less a likelihood of ultimate success. Proving "undue concentration" in the relevant market is part of the FTC's *prima facie* case. *See FTC v. RAG-Stiftung*, 436 F. Supp. 3d 278, 310 (D.D.C. 2020). But as economic analysis will show, in any properly defined market, Coach, Kate Spade, and Michael Kors would represent less than 30 percent of sales, which does not give rise to any presumption of likely harm in this highly dynamic and differentiated industry. *See United States v. Oracle Corp.*, 331 F. Supp. 2d 1098, 1123 (N.D. Cal. 2004) ("A presumption of anticompetitive effects from a combined share of 35% in a differentiated product market is unwarranted. Indeed, the opposite is likely true."). The combined trends of declining Michael Kors' sales and the increasing sales and shares of competing products further demonstrate that the merged entity will not have power to harm consumers. *See United States v. Waste Mgmt., Inc.*, 743 F.2d 976, 983 (2d Cir. 1984) (finding no anticompetitive effect from 48.8% market share where there was "easy" entry "into the relevant product and geographic market by new firms or by existing firms").[5]

---

[5]   The FTC's allegations about market concentration reveal that it did not have data sufficient to perform reliable share calculations when it filed this lawsuit—another defect of its inadequate investigation. Instead of presenting actual market-share or Herfindahl-Hirschman Index ("HHI") calculations, the Complaint baldly claims that those calculations (whatever they are) are "considerably more than 30 percent" market share and "above" the HHI levels that the FTC considers problematic, Compl. ¶ 75, based on what the FTC has since called a "preliminary estimate," May 13, 2024 Hrg. Tr. at 32:24-33:2. The data source and methodology the FTC employed to reach those undisclosed estimates remain murky (other than that it included men's and women's handbags), but the FTC certainly did not include data from the more than one hundred fifty brands currently selling handbags in competition with Tapestry and Capri in the United States.

The FTC attempts to bandage the holes in its case by claiming the loss of head-to-head competition is enough of a basis alone to block the Transaction. Not true. There is no legal support for the theory that loss of head-to-head competition, absent an undue concentration in a properly defined market, can violate Section 7 of the Clayton Act. As recently as four years ago, a court found in another FTC merger challenge that there was not "a single case in which a court has enjoined a merger, even at this preliminary stage, where the Government failed to show undue concentration in a relevant market as its prima facie case requires, almost always through an HHI or similar metric." *RAG-Stiftung*, 436 F. Supp. 3d at 287, 291, 310. The law has not changed since the Supreme Court laid down the requirement that "[d]etermination of the relevant market is a necessary predicate to a finding of a violation of the Clayton Act because the threatened monopoly must be one which will substantially lessen competition within the area of effective competition," *E.I. du Pont de Nemours*, 353 U.S. at 593, a standard the FTC has acknowledged.[6]

The need for proof of a substantial lessening of competition in a relevant market is necessary to prevent the overreach the FTC engages in here. Defendants produced over four million documents to the FTC showing they face robust competition from other brands, they are losing share to new entrants, "true luxury" brands, and dynamic competitors, and that Michael Kors (in particular) is in decline. From that mountain of materials, the FTC cherry-picks a handful of documents discussing competition between Tapestry and Capri. But the competitive effects of

---

[6]    The FTC has previously acknowledged that "[t]he government must show that the merger would produce a 'firm controlling an undue percentage share of the relevant market, and [would] result[] in a significant increase in the concentration of firms in that market.'" FTC Mem. in Supp., *FTC v. Tronox Ltd.*, No. 18-cv-1622 (D.D.C. Aug. 3, 2018), ECF No. 91 (citation omitted); *see also* FTC Mem. of Points & Authorities, *FTC v. Meta Platforms, Inc.*, No. 22-cv-04325 (N.D. Cal. Oct. 31, 2022), ECF No. 164 ("Determination of the relevant product market and geographic markets is a necessary predicate [to] deciding whether a merger contravenes the Clayton Act." (citation omitted)).

the merger can only be assessed in the context of the broader competition, not in strategic ignorance of it—hence the obligation to plead a relevant market.

The FTC's tag-along allegations relating to perceived harms to labor are even more fanciful. No evidence will support the FTC's claim that the merger "could have substantial effects on employment wages, benefits, and conditions for people who work for or seek employment from the parties and their brands." Compl. ¶ 63. The FTC makes no effort to identify a relevant market of laborers that will be adversely affected by the merger, let alone show that Tapestry and Capri combined will have an undue concentration of any such market in the United States—because, it appears, the FTC is not pursuing a separate case about labor markets at all. Instead, the Complaint emphasizes a single instance in 2021, when Tapestry announced an increase of its U.S. minimum wage to $15 an hour in July 2021, and Michael Kors later increased its minimum wage to $15 effective in October 2021. Compl. ¶¶ 9, 62. The Complaint omits any reference to the fact that because of the nationwide retail-labor shortages brought about by the pandemic, and to compete with retailers of all product types (and employers in other industries), huge numbers of retailers moved to a $15 minimum wage in 2020 and 2021.[7] Retail workers for Tapestry and Capri could easily switch to many or all of those employers and others, which explains why both companies increased their U.S. wages to a $15 per hour baseline in 2021.

The FTC's Complaint suffers numerous flaws that eviscerate any likelihood of success on the merits of its case. The FTC bears the burden of proof. But the FTC has not articulated a viable product market, cannot show that Defendants would possess undue concentration in any properly

---

[7]     The list of nationwide retailers that bumped up to a $15 per hour minimum wage between June 2020 and November 2021 includes Target, Best Buy, Wayfair, Starbucks, Signet Jewelers, Chipotle, McDonald's, Under Armour, CVS, Lululemon, Walgreens, Williams-Sonoma, Saks Off Fifth, Macy's, Puma, and many more.

defined market, and cannot show the likelihood of anticompetitive harm in connection with the sale of their handbags (however defined) post-transaction.  The FTC's theory ignores the commercial realties of the industry and stretches to assert issues where none exist.

## RESPONSE TO THE SPECIFIC ALLEGATIONS IN THE COMPLAINT

All allegations not expressly admitted herein are denied.  Tapestry does not interpret the headings and subheadings throughout the Complaint as well-pleaded allegations to which any response is required.  To the extent a response is required, Tapestry denies all allegations in the headings and subheadings of the Complaint.  Use of certain terms or phrases defined in the Complaint is not an acknowledgment or admission of any characterization FTC may ascribe to the terms.  Unless otherwise defined, capitalized terms shall refer to the capitalized terms defined in the Complaint, but any such use is not an acknowledgment or admission of any characterization FTC may ascribe to the capitalized terms.

Tapestry does not concede the truthfulness of third-party sources quoted or referenced in the Complaint.  To the extent a response is required, Tapestry denies all allegations of the third-party sources quoted in or referenced in the Complaint.  Unless expressly acknowledged below, Tapestry further does not concede the accuracy or completeness of alleged quotations attributed to or from Tapestry employees or documents, which are provided without the appropriate context or proffered in part to assert truth in a manner that may not be consistent with the declarant's intent. Tapestry reserves the right to amend and/or supplement this Answer at a later stage of the proceedings.   Each paragraph below corresponds to the same-numbered paragraph in the Complaint.

The preamble to the Complaint characterizes this action and does not require a response. To the extent that a response is deemed necessary, Tapestry admits that the FTC purports to bring an action under Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C.

§ 53(b), and Section 16 of the Clayton Act, 15 U.S.C. § 26.  Tapestry further admits that the FTC purports to bring an action in the administrative proceedings, *In the Matter of Tapestry, Inc. and Capri Holdings Limited,* Docket No. 9429 (the "FTC Administrative Action"), under Sections 7 and 11 of the Clayton Act, 15 U.S.C. §§ 18, 21, and Section 5 of the FTC Act, 15 U.S.C. § 45, to prevent Tapestry from acquiring Capri.

Tapestry denies that the FTC has any legitimate claim against Defendants, that the Proposed Transaction violates the Clayton Act or FTC Act, that the FTC has any likelihood of success on the merits, or that the FTC is entitled to any relief, including for all of the reasons articulated in Tapestry's and Capri's Answers filed in the FTC Administrative Action on May 7, 2024.  Tapestry denies in all other respects the allegations in the preamble to the Complaint.

## ANSWER TO COMPLAINT

1.      Tapestry admits that Tapestry proposes to acquire Capri in a transaction valued at $8.5 billion.  Tapestry further admits that if the Proposed Transaction closes, Coach, Kate Spade, and Michael Kors would be owned by Tapestry.   Tapestry further responds that the selective quotation of material in Paragraph 1 is taken out of context and misleading; the full document speaks for itself.  The rest of Paragraph 1 contains legal arguments and conclusions to which a response is not required.  To the extent a response is required, Tapestry denies that the Proposed Transaction would harm consumers; instead, it will lead to innovation and benefit consumers. Tapestry denies the remaining allegations in Paragraph 1.

2.      Paragraph 2 contains legal arguments and conclusions to which a response is not required.  To the extent a response is required, Tapestry denies the allegations in Paragraph 2, except admits that it sells products from clothing to eyewear to footwear and competes with numerous sellers of those products.   Tapestry denies that "'accessible luxury' handbags" constitutes a relevant product market and lacks sufficient information to understand the contours

of FTC's proposed market.  Tapestry further denies FTC's characterization of Tapestry and Capri's combined market share, that the Proposed Transaction will result in a player that will dwarf all other market players, and that Tapestry and Capri currently operate a "duopoly."

3.      Tapestry admits that it first used the phrase "accessible luxury" over 20 years ago as part of marketing efforts and has continued to use the phrase, generally in marketing, including as a way to convey that its handbags and other products were high quality, yet approachable. Tapestry denies the phrase "accessible luxury" was intended to define a relevant product market or that it does define one.  In fact, Coach has introduced a new marketing phrase, pivoting away from "accessible luxury" and toward "expressive luxury."  Industry commentators such as Vogue and other sellers of handbags have made clear that FTC's complaint provides "a limited view of a category that has exploded and morphed in recent years" and that the terminology "accessible luxury" is "limiting or not reflective of the reality of the place we hold, which is a unique one." Madeleine Schulz, These brands are reinventing accessible luxury.  Just don't call it that, Vogue, May 1, 2024, https://www.voguebusiness.com/story/fashion/these-brands-are-reinventing-accessible-luxury-just-dont-call-it-that.  Tapestry denies the remaining allegations in Paragraph 3, and further states that the quoted language Paragraph 3 is taken out of context and is misleading, and that the full content of the documents speaks for itself.

4.      Tapestry admits that it has used the phrase "accessible luxury" in the context of marketing, but denies that "'accessible luxury' handbags" constitutes a product market and lacks sufficient information to understand the contours of FTC's proposed market.  Tapestry admits that it has used the phrase "luxury," "true luxury," high-end luxury" or "European luxury," but denies that these are a separate product market for antitrust purposes.  Tapestry lacks sufficient knowledge to form a belief as to the truth of whether undefined "elite" brands claim affluent, high-wealth

consumers.  Tapestry further lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 4, and denies those allegations on that basis.

5.      Tapestry admits that it engages in consumer research and collects demographic and income information as part of this research.  Tapestry lacks sufficient knowledge to form a belief as to the truth of the Capri document cited in Paragraph 5 or whether it even relates to FTC's alleged handbag product market or the product market for some other good.  Tapestry denies the remaining allegations in Paragraph 5.

6.      Tapestry lacks sufficient knowledge to form a belief as to the truth of the Capri document cited in Paragraph 6.  With respect to the quote from the Coach document, Tapestry responds that the selective quotation of material in Paragraph 6 is taken out of context and is misleading, and that the full document speaks for itself.  The rest of Paragraph 6 contains legal arguments and conclusions that do not warrant a response.  To the extent a response is required, Tapestry denies the allegations.  The Proposed Transaction is procompetitive and will benefit American consumers and employees of the Defendants.

7.      Paragraph 7 contains legal arguments and conclusions that do not warrant a response.  To the extent a response is required, Tapestry denies the allegations.  The Proposed Transaction is procompetitive and will benefit American consumers and employees of the Defendants.  Tapestry further denies that FTC's 2023 Merger Guidelines have any relevance.  They are non-binding statements that identify the enforcement practices of the FTC and depart from modern caselaw.

8.      Tapestry lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 8, and denies the allegations on that basis,

except admits that in the U.S., Tapestry competes for employees working in a variety of locations and from a across a range of functions and industries.  The first and third sentences of Paragraph 8 assert legal arguments and conclusions that do not warrant a response.  To the extent a response is required, Tapestry denies the allegations.

9.     Tapestry admits that Tapestry publicly committed to a $15 per hour minimum wage for U.S. hourly employees on or about July 2021, like many U.S. retailers who also increased their minimum wages to $15 per hour.  For instance, Tapestry is informed and believes that in the U.S., retailers that moved to a $15 minimum wage between June 2020 and November 2021 include Target, Best Buy, Wayfair, Starbucks, Signet Jewelers, Chipotle, McDonald's, Under Armour, CVS, Lululemon, Walgreens, Williams-Sonoma, Saks Off Fifth, Macy's, Puma, and many more. Tapestry also admits that Michael Kors publicly committed to a $15 per hour minimum wage effective on or about October 3, 2021.  Tapestry lacks sufficient knowledge to form a belief as to the truth of the Capri document cited in Paragraph 9.  Tapestry denies the remaining allegations in Paragraph 9, and further states that the quoted language in the first sentence is taken out of context and is misleading, and that the full content of the document speaks for itself.

10.     Paragraph 10 asserts legal arguments and conclusions that do not warrant a response.  To the extent a response is required, Tapestry admits that it has used the term "Coachenomics," but denies the allegation's characterization of "Coachenomics." "Coachenomics" has been used to describe greater investments in marketing to highlight the attractiveness and value of Coach products for consumers along with strategic cost reductions that do not affect the customer.  Tapestry intends to revitalize the Michael Kors brand and invest in other Capri brands, including by supporting them with Tapestry's consumer engagement platform and technology-based data analytics capabilities to help grow consumer connection and brand

sales.  The Proposed Transaction will increase demand for Capri's products (including handbags), expand output, and ultimately deliver the Capri brands to more consumers.  Tapestry denies all other allegations.

11.     Tapestry states that the quoted language is taken out of context and is misleading, and that the full content of the document speaks for itself.  Paragraph 11 further asserts legal arguments and conclusions that do not warrant a response.  To the extent a response is required, Tapestry denies the allegations.

12.     Paragraph 12 asserts legal arguments and conclusions to which no response is required.  To the extent that a response is deemed necessary, Tapestry denies that "'accessible luxury' handbags" constitutes an antitrust product market and lacks sufficient information to understand the contours of FTC's proposed market.  Tapestry further denies the remaining allegations in Paragraph 12.

13.     Paragraph 13 asserts legal arguments and conclusions that do not warrant a response.  To the extent a response is required, Tapestry denies that "'accessible luxury' handbags" constitutes an antitrust product market and lacks sufficient information to understand the contours of FTC's proposed market.  Tapestry further states that the quoted language is taken out of context and is misleading, and that the full content of the documents speaks for itself.  Tapestry denies the remaining allegations in Paragraph 13.

14.     Paragraph 14 asserts legal arguments and conclusions that do not warrant a response.  To the extent a response is required, Tapestry denies that "'accessible luxury' handbags" constitutes an antitrust product market and lacks sufficient information to understand the contours of FTC's proposed market.  Tapestry further states that entry and expansion are easy and ongoing, contributing to a dynamic marketplace.  Tapestry denies the remaining allegations except that

Tapestry lacks sufficient information to form a belief about the purported story of Rebecca Minkoff.

15.     Paragraph 15 asserts legal arguments and conclusions that do not warrant a response.  To the extent a response is required, Tapestry denies the allegations.  Tapestry further states that the Proposed Transaction is complementary, will result in procompetitive efficiencies, and will revitalize the declining Michael Kors brand.

16.     Tapestry admits that on April 22, 2024, the Commission held a vote on the Transaction, and initiated an administrative proceeding to determine the antitrust merits of the Proposed Transaction.  The rest of Paragraph 16 asserts legal arguments and conclusions that do not warrant a response.  To the extent a response is required, Tapestry denies the allegations.

17.     Paragraph 17 purports to characterize the temporary restraining order stipulated by the parties, and Tapestry respectfully refers the Court to that document for a complete and accurate statement of its contents.  To the extent the allegations in Paragraph 17 are inconsistent with that document, Tapestry denies the allegations.

18.     Paragraph 18 asserts legal conclusions and arguments to which no response is required.  To the extent that a response is deemed necessary, Tapestry denies the allegations in Paragraph 18.

19.     Tapestry admits that Defendants are engaged in activities affecting commerce. Tapestry further admits that the Federal Trade Commission filed this proceeding.  Tapestry denies any implication that this civil action is appropriate.   Tapestry further denies any remaining allegations in Paragraph 19.

20.     Paragraph 20 is an excerpt of Section 13(b) of the FTC Act, which does not require a response.  To the extent that it suggests that a preliminary injunction should be granted in this

proceeding, Paragraph 20 asserts legal conclusions to which no response is required.  To the extent a response is required, Tapestry denies the allegations contained in Paragraph 20.

21.     Tapestry admits that Defendants are engaged in activities affecting commerce.

22.     Tapestry admits that venue is proper, and that this Court has personal jurisdiction of Tapestry for this action.

23.     Paragraph 23 asserts legal conclusions that do not warrant a response.  To the extent a response is required, Tapestry admits that FTC is an agency of the United States government.

24.     Tapestry admits that for Fiscal Year 2023 its gross margins are approximately 71% and that Coach constitutes 74.5% of Tapestry's sales and Kate Spade constitutes 21.3%.  These numbers change from period to period, and the FTC has not identified a time period with respect to its allegations.  The last two sentences contain legal conclusions and arguments to which a reply is not required.  To the extent a reply is required, Tapestry denies the legal arguments and conclusions in the last two sentences of Paragraph 24.  Tapestry otherwise admits the allegations in this Paragraph other than the last three sentences where Tapestry only admits that Coach and Kate Spade stores are located throughout the United States.

25.     Tapestry lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 25 and denies the allegations on that basis.

26.     Tapestry admits the allegations in Paragraph 26.

27.     Paragraph 27 asserts legal arguments and conclusions that do not warrant a response.  To the extent a response is required, Tapestry denies the allegations, including that that "'accessible luxury' handbags" constitutes an antitrust product market and that the Proposed Transaction may substantially lessen competition, or tend to create a monopoly, in this undefined proposed market.  However, Tapestry admits that it sells handbags in the United States along with

18

multiple other sellers.  Tapestry further contends that it lacks sufficient information to understand the contours of FTC's proposed market.

28.     Tapestry admits that it and Coach have used the phrase "accessible luxury" in the context of marketing and admits that it sells handbags.  Tapestry lacks sufficient knowledge to form a belief as to the statements of unidentified persons referenced in Paragraph 28.  The rest of Paragraph 28 asserts legal arguments and conclusions that do not warrant a response.  To the extent a response is required, Tapestry denies the allegations including that "accessible luxury" constitutes a product market and lacks sufficient information to understand the contours of that proposed market.  Tapestry further denies the second sentence in Paragraph 28 because Tapestry competes with numerous competitors for the sale of handbags, regardless of how that market is defined.

29.     Tapestry admits that it and Coach have used the phrase "accessible luxury," "aspirational luxury," and other terms in the context of marketing and certain internal documents. The rest of Paragraph 29 asserts legal arguments and conclusions that do not warrant a response. To the extent a response is required, Tapestry denies the allegations, including that "'accessible luxury' handbags" constitutes an antitrust product market.  Tapestry further states that the quoted language is taken out of context and is misleading, and that the full content of the documents speaks for itself.

30.     Tapestry admits that it has used the phrase "accessible luxury" in the context of marketing and certain internal documents, but denies that "'accessible luxury' handbags" constitutes an antitrust product market and contends that it lacks sufficient information to understand the contours of that proposed market.  Tapestry further states that the quoted language

is taken out of context and is misleading, and that the full content of the document speaks for itself. Tapestry denies the remaining allegations in Paragraph 30.

31.     Tapestry admits that it has used the phrase "accessible luxury" in the context of marketing, but denies that "accessible luxury" constitutes an antitrust product market and contends that it lacks sufficient information to understand the contours of that proposed market.  Tapestry further states that the quoted language is taken out of context and is misleading, and that the full content of the document speaks for itself.  Tapestry lacks sufficient knowledge to form a belief as to the truth of the Capri documents referenced in Paragraph 31.  Tapestry denies the remaining allegations in Paragraph 31.

32.     Tapestry admits that the marketing phrase "accessible luxury" is used from time-to-time by others, but denies that "'accessible luxury' handbags" constitutes an antitrust product market and contends that it lacks sufficient information to understand the contours of that proposed market.  Tapestry states that the quoted language is taken out of context and is misleading, and that the full content of the document speaks for itself.  Tapestry further states that Paragraph 32's use of the undefined or vague term "other industry participants" renders Paragraph 32's allegations incapable of further response as written.   Tapestry denies the remaining allegations in Paragraph 32.

33.     Tapestry admits it has used the phrase "accessible luxury" in the context of marketing and certain internal documents, but denies that "'accessible luxury' handbags" constitutes a relevant product market for antitrust purposes and contends that it lacks sufficient information to understand the contours of that proposed market.  Tapestry further states that the quoted language is taken out of context and is misleading, and that the full content of the document speaks for itself.  Tapestry denies the remaining allegations in Paragraph 33.

34.     Tapestry denies the FTC's characterization of Tapestry's document in Paragraph 34, and further states that the excerpt is taken of context and is misleading, and that the full content of the document speaks for itself.

35.     Tapestry denies the allegations in Paragraph 35.   Tapestry further states that Paragraph 35's use of quotations from unidentified sources renders Paragraph 35's allegations incapable of further response as written.

36.     Tapestry denies that "'accessible luxury' handbags" constitutes an antitrust product market and contends that it lacks sufficient information to understand the contours of FTC's proposed market.   Tapestry lacks sufficient knowledge to form a belief as to the truth of the Capri documents referenced in Paragraph 36.   Tapestry further states that the quoted language is taken out of context and is misleading, and that the full content of the documents speaks for itself. Tapestry denies the remaining allegations in Paragraph 36.

37.     Tapestry lacks sufficient knowledge to form a belief as to the truth of the Capri documents cited in Paragraph 37.

38.     Tapestry denies the allegations in Paragraph 38 to the extent they are intended to assert that "'accessible luxury' handbags" constitute a product market.   Tapestry lacks sufficient information to understand the contours of that proposed market.

39.     The first sentence of this Paragraph contains legal arguments and conclusions to which a response is not required.   For the second sentence, Tapestry states that the quoted language is taken out of context and is misleading, and that the full content of the documents speaks for itself.   The third sentence and second to last sentence purport to quote language from Capri, and Tapestry lacks sufficient knowledge to form a belief as to the truth of the Capri documents cited. The fifth sentence purports to characterize the contents of regulatory filings, and Tapestry

respectfully refers to those filings for a complete and accurate statement of their contents.  The rest of this Paragraph contains legal arguments and conclusions to which a response is not required.  To the extent a response is required, Tapestry denies those allegations.  Tapestry further denies any allegations not specifically addressed above.

40.     Paragraph 40 purports to make generalizations regarding the "discounting and promotions" of undefined or vaguely defined groups of handbags.  Accordingly, Tapestry lacks sufficient knowledge or information to admit or deny the allegations in Paragraph 40 as written, and therefore denies them.  Tapestry further denies that "'accessible luxury' handbags" constitutes an antitrust product market and contends that it lacks sufficient information to understand the contours of that proposed market.

41.     Paragraph 41 purports to make generalizations regarding the "omnichannel approach and sales experience" of undefined or vaguely defined groups of handbags.  Accordingly, Tapestry lacks sufficient knowledge or information to admit or deny the allegations in Paragraph 41 as written, and therefore denies them, except admits that handbags are sold in multiple channels.  Tapestry further denies that "'accessible luxury' handbags" constitutes an antitrust product market and contends that it lacks sufficient information to understand the contours of that proposed market.

42.     Tapestry lacks sufficient knowledge to form a belief as to the truth of the statement by Simone cited in Paragraph 42.  With respect to the last sentence, Tapestry states that the quote is taken out of context and is misleading, and that the full content of the documents speaks for itself.   Tapestry denies the remaining allegations in Paragraph 42, and further denies that "'accessible luxury' handbags" constitutes an antitrust product market and contends that it lacks sufficient information to understand the contours of that proposed market.

43.    The first two sentences of Paragraph 43 assert legal arguments and conclusions to which no response is required.  To the extent a response is required, Tapestry denies the allegations contained in the first two sentences of Paragraph 43.  The third sentence contains quoted language that is taken out of context and is misleading, and the full content of the documents speaks for itself.  The final sentence of Paragraph 43 purports to characterize the contents of regulatory filings, and Tapestry respectfully refers to those filings for a complete and accurate statement of their contents.  To the extent the allegations set forth in the final sentence of Paragraph 43 are inconsistent with those filings, Tapestry denies the allegations.  Tapestry denies any remaining allegations in Paragraph 43.

44.    Paragraph 44 asserts legal conclusions and argument that do not warrant a response.

45.    Tapestry denies that "'accessible luxury' handbags" constitutes an antitrust product market and lacks sufficient information to understand the contours of that proposed market. Paragraph 45 asserts legal conclusions and argument that do not require a response.  To the extent that a response is required, Tapestry denies that FTC's 2023 Merger Guidelines have any relevance.  They are non-binding statements that identify the enforcement practices of the FTC and depart from modern caselaw.  Tapestry denies the remaining allegations in Paragraph 45.

46.    The first sentence of Paragraph 46 asserts legal conclusions and argument that do not warrant a response.  To the extent that a response is required, Tapestry admits that it sells handbags in the United States.  Tapestry further admits that it has U.S.-specific marketing. Tapestry lacks sufficient knowledge to form a belief as to the truth of the marketing practices and business strategies of undefined or vaguely defined other "industry participants."  Tapestry denies the remaining allegations in Paragraph 46.

47.     Paragraph 47 asserts legal conclusions and argument that do not warrant a response. To the extent that a response is required, Tapestry denies the allegations in Paragraph 47.

48.     Paragraph 48 asserts legal conclusions and argument that do not warrant a response. To the extent that a response is required, Tapestry denies that FTC's 2023 Merger Guidelines have any relevance.  They are non-binding statements that identify the enforcement practices of the FTC and depart from modern caselaw.  Tapestry denies the remaining allegations in Paragraph 48.

49.     Paragraph 49 asserts legal conclusions and argument that do not warrant a response. To the extent that a response is required, Tapestry denies the allegations in Paragraph 49.

50.     Paragraph 50 asserts legal conclusions and argument that do not warrant a response. To the extent that a response is required, Tapestry denies the allegations in Paragraph 50.  The Proposed Transaction will benefit consumers.

51.     Tapestry lacks sufficient knowledge to form a belief about a letter from an unidentified Tapestry shareholder and therefore denies the second sentence on that basis.  Tapestry lacks sufficient knowledge to form a belief as to the truth of the Capri documents referenced in the fourth and fifth sentences in Paragraph 51.  Tapestry further states that the quoted language is taken out of context and misleading, and that the full content of the documents speaks for itself. Tapestry denies the remaining allegations in Paragraph 51.

52.     Tapestry lacks sufficient knowledge to form a belief as to the truth of the Capri documents referenced in Paragraph 52.  Tapestry denies the remaining allegations in Paragraph 52. Tapestry further states that the quoted language is taken out of context and misleading, and that the full content of the documents speaks for itself.

53.     Paragraph 53 asserts legal conclusions and argument that do not warrant a response. To the extent that a response is required, Tapestry denies that FTC's 2023 Merger Guidelines have

any relevance.  They are non-binding statements that identify the enforcement practices of the FTC and depart from modern caselaw.  Tapestry further denies the allegations in Paragraph 53.

54.     Tapestry lacks sufficient knowledge to form a belief as to the truth of the Capri documents referenced in Paragraph 54.  Paragraph 54 purports to characterize the contents of various documents, and Tapestry respectfully refers the Court to those documents for a complete and accurate statement of their contents.  To the extent the allegations set forth in Paragraph 54 are inconsistent with those documents, Tapestry denies the allegations.  Tapestry denies any remaining allegations in Paragraph 54.

55.     Tapestry lacks sufficient knowledge to form a belief as to the truth of the Capri documents referenced in Paragraph 55.  The rest of Paragraph 55 contains legal arguments and conclusions to which no response is required.  To the extent a response is required, Tapestry denies the remaining allegations in Paragraph 55.

56.     Tapestry lacks sufficient knowledge to form a belief as to the truth of the Capri documents referenced in Paragraph 56.  Tapestry denies the remaining allegations in Paragraph 56.

57.     Tapestry lacks sufficient knowledge to form a belief as to the truth of the Capri documents referenced in Paragraph 57.   Tapestry denies any remaining allegations in Paragraph 57.

58.     Tapestry admits that digital sales are an important and growing part of its business. Tapestry lacks sufficient knowledge to form a belief as to the truth of Capri's actions characterized in Paragraph 58.  With respect to the last sentence of Paragraph 58, Tapestry states that the quoted language is taken out of context and is misleading, and that the full content of the statement speaks for itself.  Tapestry denies the remaining allegations in Paragraph 58.

59.     The first two sentences of Paragraph 59 assert legal argument and conclusions to which no response is required.  To the extent a response is required, Tapestry denies the allegations contained in the first two sentences of Paragraph 59.   The third and fourth sentences of Paragraph 59 purport to reference statements by Capri personnel, and Tapestry lacks sufficient knowledge to form a belief as to the truth of those statements.  Tapestry denies any remaining allegations in Paragraph 59.

60.     The first sentence contains legal arguments and conclusions to which no response is required.  Tapestry lacks sufficient knowledge to form a belief as to the truth of the Capri documents and actions characterized in the second sentence of Paragraph 60.  The third sentence contains quoted language that is taken out of context and is misleading, and the full content of the documents speaks for itself.  Tapestry denies the remaining allegations in Paragraph 60.

61.     Paragraph 61 contains legal arguments and conclusions to which no response is required.  To the extent a response is required, Tapestry denies the allegations in Paragraph 61.

62.     Tapestry lacks sufficient knowledge to form a belief as to the truth of the Capri documents referenced and characterized in Paragraph 62.  Tapestry admits that Michael Kors publicly committed to a $15 per hour minimum wage effective October 3, 2021.  To the extent a response is required on any other allegation, Tapestry denies the allegations in Paragraph 62 except as explicitly admitted.

63.     Paragraph 63 asserts legal arguments and conclusions that do not require a response.  To the extent that a response is required, Tapestry denies those allegations, denies the remaining allegations in Paragraph 63, and further states that with respect to the third sentence, the quoted language is taken out of context and is misleading, and that the full content of the documents speaks for itself.

64.     Paragraph 64 purports to characterize the contents of deal documents, and Tapestry respectfully refers to those documents for a complete and accurate statement of their contents.  To the extent the documents are inconsistent, Tapestry denies the allegations in Paragraph 64.

65.     Tapestry admits that it has used the term "Coachenomics," but denies the allegation's characterization of "Coachenomics." "Coachenomics" describes the procompetitive strategy of making greater investments in marketing to increase the attractiveness and the value of Coach products for consumers along with strategic cost reductions that do not affect the customer. Tapestry admits that in 2016 it discussed a plan for North American department store distribution, to enable Tapestry to maintain long-term brand health and minimize confusion across channels. Tapestry further states that numerous factors contribute to Average Unit Retail price at a given point in time.  Paragraph 65 also purports to characterize the contents of Tapestry documents, and Tapestry respectfully refers to those documents for a complete and accurate statement of their contents.  Tapestry denies the remaining allegations in Paragraph 65.

66.     Paragraph 66 contains legal arguments and conclusions to which a response is not required.  To the extent a response is required, Tapestry denies the allegations in Paragraph 66. Tapestry further states that the quoted language is taken out of context and is misleading, and that the full content of the document speaks for itself.

67.     Tapestry lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence regarding Michael Kors.  The rest of the first sentence and the second sentence contain legal arguments and conclusions to which a response is not required. To the extent a response is required, Tapestry denies the allegations.  With respect to the last sentence, Tapestry contends that the quoted language is taken out of context and misleading, and

that the full content of the document speaks for itself and does not support the allegations in Paragraph 67.

68.    Tapestry admits that it has used the term "Coachenomics," but denies the allegation's characterization of "Coachenomics." "Coachenomics" describes the procompetitive strategy of making greater investments in marketing to increase the attractiveness and the value of Coach products for consumers along with strategic cost reductions that do not affect the customer. Tapestry denies the remaining allegations in Paragraph 68.  Tapestry further states that the quoted language is taken out of context and is misleading, and that the full content of the documents speaks for itself.

69.    Tapestry admits that it has a brand growth platform and states that numerous factors contribute to pricing, Average Unit Retail, and gross margin at a given point of time, including investments in marketing and product, changing consumer trends and preferences, and competition.  Tapestry intends to revitalize the Michael Kors brand and invest in other Capri brands, including by supporting them with Tapestry's consumer engagement platform and technology-based data analytics capabilities to grow consumer connection and brand sales.  The Proposed Transaction will increase demand for Capri's products, expand output, and ultimately deliver the Capri brands to more consumers.  Tapestry denies the remaining allegations in Paragraph 69.

70.    Paragraph 70's use of the undefined or vague terms "enormous" and "superior" renders Paragraph 70's allegations incapable of further response as written.  Tapestry admits that it has made procompetitive investments in data and technological capabilities.  Tapestry states that these investments allow Tapestry to market its brands and products more effectively to help drive value in the eyes of the consumers and to deliver the products that consumers desire more

efficiently.  Tapestry intends to revitalize the Michael Kors brand and invest in other Capri brands, including by supporting them with Tapestry's consumer engagement platform and technology-based data analytics capabilities to grow consumer connection, improve Capri products and increase brand sales.  The Proposed Transaction will increase demand for Capri's products, expand output, and ultimately deliver the Capri brands to more consumers.  Tapestry otherwise denies the allegations in Paragraph 70.

71.     Paragraph 71 asserts legal arguments and conclusions that do not warrant a response.  Additionally, Tapestry lacks sufficient information to assess the "'accessible luxury' handbag" market and what the FTC contends is included in that market.  To the extent a response is required, Tapestry denies the allegations in Paragraph 71.

72.     Paragraph 72 asserts legal arguments and conclusions that do not warrant a response.  To the extent that a response is required, Tapestry denies that FTC's 2023 Merger Guidelines have any relevance.  They are non-binding statements that identify the enforcement practices of the FTC and depart from modern caselaw.

73.     Paragraph 73 asserts legal arguments and conclusions that do not warrant a response.  To the extent that a response is required, Tapestry denies the allegations in Paragraph 73, denies that FTC's 2023 Merger Guidelines have any relevance, and states that they are non-binding statements that identify the enforcement practices of the FTC and depart from modern caselaw.

74.     Tapestry denies the allegations contained in the first sentence of Paragraph 74.  The remainder of Paragraph 74 asserts legal arguments and conclusions that do not require a response.  To the extent a response is required, Tapestry denies the remaining allegations in Paragraph 74 including that FTC's 2023 Merger Guidelines have any relevance here.  They are non-binding statements that identify the enforcement practices of the FTC and depart from modern caselaw.

75.     Paragraph 75 asserts legal arguments and conclusions that do not require a response.  To the extent that a response is required, Tapestry denies that "'accessible luxury' handbags" constitutes an antitrust product market and lacks sufficient information to understand the contours of that proposed market.  Tapestry further denies the remaining allegations in Paragraph 75.

76.     Tapestry admits that Tapestry owns Coach, Kate Spade, and Stuart Weitzman. Tapestry admits that Capri owns Michael Kors, Versace, and Jimmy Choo.  Tapestry further admits that the Proposed Transaction contemplates Tapestry purchasing Capri.  The remaining allegations in Paragraph contain legal arguments and conclusions to which a response is not required.  To the extent a response is required, Tapestry denies the remaining allegations in Paragraph 76.

77.     Paragraph 77 is an excerpt of the Merger Guidelines, which does not require a response.  Tapestry refers to the Merger Guidelines for a complete and accurate statement of their contents.  To the extent that a response is required, Tapestry denies that FTC's 2023 Merger Guidelines have any relevance here.   They are non-binding statements that identify the enforcement practices of the FTC and depart from modern caselaw.

78.     Paragraph 78 asserts legal arguments and conclusions that do not warrant a response.  Tapestry further states that the quoted language is taken out of context and misleading, and the full content of the documents speaks for itself.  To the extent that a response is required, Tapestry denies the allegations in Paragraph 78.

79.     Tapestry denies the allegations in Paragraph 79.  Tapestry further states that the quoted language is taken out of context and is misleading, and the full content of the documents speaks for itself.

80.     Tapestry states that the quoted language is taken out of context and misleading, and the full content of the documents speaks for itself.  This Paragraph further contains legal arguments and conclusions purportedly based on Tapestry documents to which no response is required.  To the extent a response is required, Tapestry denies the allegations in Paragraph 80.

81.     Tapestry denies that "'accessible luxury' handbags" constitutes an antitrust product market and lacks sufficient information to understand the contours of that proposed market. Tapestry denies the remaining allegations in Paragraph 81.  Tapestry further states that the quoted language is taken out of context and misleading, and the full content of the documents speaks for itself.

82.     Paragraph 82 asserts legal arguments and conclusions that do not warrant a response.  Tapestry further states that the quoted language is taken out of context and misleading, and the full content of the documents speaks for itself.  To the extent that a response is required, Tapestry denies the allegations in Paragraph 82.

83.     Paragraph 83 contains legal arguments and conclusions that do not warrant a response.  Tapestry further states that the quoted language is taken out of context and misleading, and the full content of the documents speaks for itself.  To the extent that a response is required, Tapestry denies the allegations in Paragraph 83.

84.     Paragraph 84 contains legal arguments and conclusions that do not warrant a response.  Tapestry further states that the quoted language is taken out of context and misleading, and the full content of the documents speaks for itself.  To the extent that a response is required, Tapestry denies the allegations in Paragraph 84.

85.     Tapestry lacks sufficient information to form a belief as to the truth of the allegations contained in the second to last sentence of Paragraph 85 regarding Rebecca Minkoff

and denies the allegations on that basis.  The rest of Paragraph 85 asserts legal arguments and conclusions that do not warrant a response.  To the extent that a response is required, Tapestry denies the allegations, and further states that entry and expansion are easy and ongoing, such that it competes in a dynamic marketplace.

86.     The second sentence of Paragraph 86 contains quoted language that is taken out of context, and the full content of the documents speaks for itself.  The rest of Paragraph 86 contains legal arguments and conclusions that do not warrant a response.  To the extent that a response is required, Tapestry denies the allegations.  Tapestry further states that there are numerous ways to sell products including through online channels, which makes consumers highly accessible for new entrants.  Additionally, wholesale retailers carry a large variety of brands in both their brick-and-mortar and online stores, allowing brands to expand their exposure and reach an even broader consumer base.

87.     Tapestry admits that its brands have marketing departments, and Tapestry invests money in marketing.  Tapestry further admits that it participates in fashion events.  The rest of Paragraph 87 contains legal arguments and conclusions that do not require a response.  To the extent a response is required, Tapestry denies the allegations.  Tapestry further states that the internet enables entrants to easily reach millions of prospective consumers through social media.  For example, a celebrity posting a photo with a product or engagement with a popular influencer can both drive demand.

88.     Tapestry admits that it maintains consumer data that it utilizes to develop and market its brands and products more effectively to drive value in the eyes of the consumers and to deliver the products that consumers desire more efficiently.  The third sentence of Paragraph 88 contains quoted language that is taken out of context, and the full content of the documents speaks

for itself.  The rest of Paragraph 88 contains legal arguments and conclusions that do not warrant a response.  To the extent that a response is required and except as specifically admitted herein, Tapestry denies the allegations.

89.     Paragraph 89 contains legal arguments and conclusions that do not warrant a response.  To the extent that a response is required, Tapestry denies the allegations.  Tapestry further states that are no significant barriers to procuring manufacturing services.  There are many manufacturers of fashion products, and entrants have numerous choices when looking to manufacture their products.

90.     Paragraph 90 asserts legal arguments and conclusions that do not warrant a response.  To the extent that a response is required, Tapestry denies the allegations in Paragraph 90, and further states that the Proposed Transaction is complementary and will result in procompetitive efficiencies and will revitalize the declining Michael Kors brand by providing consumers better products.

91.     Paragraph 91 asserts legal arguments and conclusions that do not warrant a response.  To the extent that a response is required, Tapestry denies the allegations in Paragraph 91.

92.     Tapestry denies the allegations in Paragraph 92.

93.     Paragraph 93 asserts legal arguments and conclusions that do not warrant a response.  To the extent that a response is required, Tapestry specifically denies that preliminary relief is warranted and necessary and that the timing of the Commission's ruling has any relevance here whatsoever, and further denies the remaining allegations in Paragraph 93.

94.     Tapestry denies the allegations contained in the first sentence of Paragraph 94.  The remainder of Paragraph 94 is a request for relief to which no response is required.  To the extent a

response is required, Tapestry denies that the FTC is entitled to the relief requested in Paragraph 94 or elsewhere in the Complaint.

Tapestry denies the allegations in the Complaint, whether express or implied, that are not specifically addressed herein.

## <u>AFFIRMATIVE AND OTHER DEFENSES</u>

Tapestry asserts the following defenses with respect to the causes of action alleged in the Complaint, without assuming the burden of proof or persuasion where such burden rests on the FTC.  Tapestry has not knowingly or intentionally waived any applicable defenses, and it reserves the right to assert and rely upon other applicable defenses that may become available or apparent throughout the course of the action.  Tapestry reserves the right to amend, or seek to amend, its Answer, including its affirmative and other defenses.

### FIRST DEFENSE

The Complaint fails to state a claim upon which relief can be granted.

### SECOND DEFENSE

The alleged market definition fails as a matter of both fact and law.

### THIRD DEFENSE

The Complaint fails to allege any plausible harm to competition, consumers, or consumer welfare.

### FOURTH DEFENSE

The Complaint fails to allege undue share in any plausibly defined relevant market.

### FIFTH DEFENSE

Any alleged harm to competition is not actionable.

## SIXTH DEFENSE

The Complaint fails to state a claim because new entrants to the relevant market were (and are) timely, likely, and sufficient to offset any alleged anticompetitive effects of the Proposed Acquisition.

## SEVENTH DEFENSE

The Proposed Acquisition is procompetitive, and will result in merger-specific efficiencies, cost synergies, product-quality improvements, and other procompetitive effects that benefit consumers.  The benefits outweigh any alleged anticompetitive effects.

## EIGHTH DEFENSE

The combination of Respondents' businesses is not likely to substantially lessen competition under the analytical framework set forth in the Clayton Act.

## NINTH DEFENSE

Neither the filing of this action nor the contemplated relief is in the public interest, pursuant to 15 U.S.C. § 45.

## TENTH DEFENSE

The Commission's claims under Section 5 of the Federal Trade Commission Act are nonactionable to the extent the Commission purports to apply Section 5 beyond the boundaries of the Clayton Act.

## ELEVENTH DEFENSE

The Commission fails to allege a time frame for the alleged anticompetitive effects.

Dated:        May 16, 2024

### LATHAM & WATKINS LLP

By: */s/ Alfred C. Pfeiffer*

Alfred C. Pfeiffer (*pro hac vice*)
Christopher S. Yates (*pro hac vice*)
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: (415) 395-8240
al.pfeiffer@lw.com
chris.yates@lw.com

Amanda P. Reeves (*pro hac vice*)
Ian R. Conner (*pro hac vice*)
Lindsey S. Champlin (*pro hac vice*)
Jennifer L. Giordano
David L. Johnson (*pro hac vice*)
Seung Wan (Andrew) Paik (*pro hac vice*)
Mary A. Casale (*pro hac vice*)
Christopher J. Brown (*pro hac vice*)
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
Telephone: (202) 637-2200
amanda.reeves@lw.com
ian.conner@lw.com
lindsey.champlin@lw.com
jennifer.giordano@lw.com
david.johnson@lw.com
andrew.paik@lw.com
mary.casale@lw.com
chris.brown@lw.com

Lawrence E. Buterman
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
lawrence.buterman@lw.com

Sean M. Berkowitz (*pro hac vice*)
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
sean.berkowitz@lw.com

*Attorneys for Tapestry, Inc.*